NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0280n.06

No. 10-6456

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Mar 13, 2012

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiff-Appellee, | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| v. | ) | TENNESSEE |
| | ) | |
| RONALD BRADLEY INGLE, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  KEITH, MARTIN, and BOGGS, Circuit Judges.

PER CURIAM.  Ronald Bradley Ingle pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  The district court sentenced him to ninety-seven months of imprisonment.  On appeal, Ingle argues that the district court miscalculated his advisory sentencing guidelines range by 1) applying a cross-reference to attempted first degree murder in determining his base offense level and 2) applying an enhancement for assaulting a law enforcement officer.

On October 2, 2007, Ingle's father called the police and reported that Ingle, who has a history of mental illness and substance abuse, was armed and threatening to commit suicide.  Two local law enforcement officers, Michael Moore and Michael Alford, responded to the call.  Alford went behind a garage and saw Ingle kneeling behind a fence post, pointing an assault rifle in Alford's direction. When Ingle ignored Alford's repeated commands to drop his weapon, Alford fired several shots toward Ingle, and Ingle returned fire.  Alford testified that he and Ingle were approximately seventy yards apart.

Alford retreated to his patrol car to retrieve more ammunition.  When he returned, Ingle had moved from behind the post and taken cover near a shed.  Ingle began firing more rounds toward

both Moore and Alford, who returned fire. Ingle ducked behind a piece of farm equipment, but emerged shortly thereafter and began walking toward the house, holding his weapon at waist height and pointing it at the officers. The officers continued to order Ingle to drop his weapon, but he did not respond. According to Moore, Ingle told the officers, "You all are going to have to kill me." Moore fired two shots, striking Ingle in the abdomen and the left arm. Ingle fell to the ground, and the officers secured his weapon and called for medical assistance. Alford testified that, while they were waiting for Ingle to be airlifted from the scene, Ingle said, "Why don't you just go on and kill me." The officers found a suicide note in Ingle's pocket.

Ingle's presentence report calculated Ingle's base offense level as thirty-three because of a cross-reference to attempted first degree murder. *See* USSG § 2A2.1(a)(1). The report also recommended a six-level increase because the offense involved an assault against a law enforcement officer. *See* USSG § 3A1.2(c)(1). After a three-level reduction for acceptance of responsibility, Ingle's total offense level was thirty-six, yielding a sentencing guidelines range of 188 to 235 months of imprisonment. Ingle's guidelines sentence became 120 months, the statutory maximum.

Ingle challenges the attempted murder cross-reference and the § 3A1.2(c)(1) enhancement, arguing that he was incapable of forming the intent necessary to commit the crimes of first degree murder and assault. Ingle argues that his only intent was to commit suicide. At the sentencing hearing, Ingle presented testimony from a psychologist, Dr. Lynne Zager, that Ingle was severely depressed at the time of the incident, that he was "severely impaired in terms of his thinking . . . and . . . his impulse control," and that, in her opinion, his intent was to kill himself, not the officers. The government's expert witness, a psychologist with the Bureau of Prisons, would not speculate as to Ingle's intent during the gunfight, but testified that his thinking during the general time period was "reality-based" and that he was able "to understand the nature and quality or wrongfulness of his acts."

The district court rejected Ingle's "suicide by cop" theory. The court noted that Ingle did not simply point the gun at the officers or fire a single shot at them and then walk into the open. Instead, he fired multiple shots at the officers from two different covered positions and came very close to

hitting them. The district court reasoned that, if Ingle "had been trying to get the officers to kill him, he certainly wouldn't have been hiding and trying to dodge their gunfire." Accordingly, the district court concluded that both the attempted murder cross-reference and the enhancement for assaulting a law enforcement officer were warranted. The district court concluded, however, that Ingle should receive some benefit for pleading guilty, and it lowered his guidelines range to seventy-eight to ninety-seven months of imprisonment. The district court imposed a sentence of ninety-seven months of imprisonment, to be followed by two years of supervised release.

We review sentences for procedural and substantive reasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007). First, we "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* If no procedural error occurred, we "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* A sentence may be substantively unreasonable "if the district court chooses the sentence arbitrarily, grounds the sentence on impermissible factors, or unreasonably weighs a pertinent factor." *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir.), *cert. denied*, 131 S. Ct. 3077 (2011). When a sentence falls within the applicable guidelines range, we afford it a rebuttable presumption of substantive reasonableness. *Id.*

The sentencing guidelines define first degree murder as "conduct that, if committed within the special maritime and territorial jurisdiction of the United States, would constitute first degree murder under 18 U.S.C. § 1111." USSG § 2A2.1, cmt. n.1. Section 1111 provides, in relevant part: "Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing . . . is murder in the first degree." 18 U.S.C. § 1111(a). "A killing is premeditated when it is the result of planning and deliberation." *See United States v. Garcia-Meza*, 403 F.3d 364, 371 (6th Cir. 2005). "The amount of time needed for premeditation" varies depending

on the circumstances, but must be long enough for the killer to have formed "the intent to kill," and "be fully conscious of that intent." *Id.*

Ingle argues that the evidence did not establish that he intended to kill the officers, but rather that he intended to kill himself by compelling the officers to shoot him, an act commonly referred to as "suicide by cop." The district court, however, did not clearly err in finding by a preponderance of the evidence that Ingle attempted to murder the two officers with premeditation. There is ample evidence in the record that Ingle was suicidal at the time of the incident, including his suicide note and subsequent suicide attempt. But there was also evidence that he acted with the intent to commit first degree murder. He fired an assault rifle at the officers at least eighteen times, some of the rounds came within inches of hitting the officers, he fired from covered positions, and he did not move into the open until he ran out of ammunition. This evidence was sufficient to support the district court's finding that Ingle acted with the requisite intent to support the cross-reference to attempted first degree murder.

In light of this evidence, we also find no clear error in the district court's application of the § 3A1.2(c)(1) enhancement, which requires only that the defendant acted recklessly. *See United States v. Coleman*, 664 F.3d 1047, 1051 (6th Cir. 2012).

The district court's judgment is affirmed.