**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0502n.06

Case No. 16-6811

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 29, 2017
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| | ) ON APPEAL FROM THE UNITED |
| v. | ) STATES DISTRICT COURT FOR |
| | ) THE WESTERN DISTRICT OF |
| ROGER JONES, JR., | ) TENNESSEE |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

BEFORE: SUTTON, DONALD, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. This case is like so many others: A tip from a confidential source resulted in a search, an arrest, and a seizure of drugs.

Sergeant Roy Turner is a veteran with the Brownsville Police Department and works regularly with confidential sources. One of his trusted sources informed him that Roger Jones, Jr., had a large amount of cocaine. Turner knew Jones because he was a repeat customer—his criminal record includes a litany of drug, domestic assault, witness coercion, and firearm offenses. So when Turner's source reported that Jones was distributing crack cocaine from a house on Lark Street, Turner listened. But Turner, like President Reagan, thought one ought to "trust but verify." So Turner drove to Lark Street to verify his source's story. Sure enough: Jones was standing in the front yard of the last house at the bend in the road.

Having corroborated a key detail provided by his trusted source, Turner sought a search warrant. But not just a run-of-the-mill search warrant—a no-knock warrant. Jones had a history of violence and the source had seen him with a handgun, so Turner suspected that the search might be dangerous. Turner drafted an affidavit to that effect, describing his observations and his conversation with the source. There was just one problem: Turner did not know the exact house number of Jones' residence. So he turned to Google Earth for an approximation, which turned out to be incorrect. Turner also downloaded Google-Earth images of the house for good measure.

Relying on Turner's affidavit, a judge approved the no-knock warrant. And a few days later, Turner and four other police officers entered the Lark Street residence, restrained Jones, and searched the scene. In a kitchen cabinet, the officers discovered cocaine, crack cocaine, and a digital scale dusted in white residue.

Jones moved to suppress evidence obtained during the search, challenging both the validity of the search warrant and the officers' conduct during the search. But after a hearing on Jones' motion, the district court upheld the search. So Jones pled guilty and reserved his right to appeal the suppression ruling. He now raises three claims on appeal: (1) the warrant lacked probable cause; (2) the warrant was invalid because it listed the wrong address; and (3) the search violated Rule 41 of the Tennessee Rules of Criminal Procedure.

When this court reviews a district court's suppression ruling, we consider legal questions de novo but factual findings for clear error. *United States v. Hudson*, 405 F.3d 425, 431 (6th Cir. 2005). And where the district court has denied a motion to suppress, this court construes the evidence in the government's favor. *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004).

*Probable Cause*.  Jones claims that the search warrant lacked probable cause because the police failed to establish the reliability of Turner's confidential source.  The issuing judge disagreed—a determination we accord "great deference."  *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc) (quoting *Illinois v. Gates*, 462 U.S. 213 (1983)).

The question is whether Turner's affidavit provided a "substantial basis" to support a finding of probable cause.  *United States v. Archibald*, 685 F.3d 553, 557 (6th Cir. 2012).  When an affidavit is based on the tip of a confidential source, we consider the source's reliability, veracity, and basis of knowledge.  *Gates*, 462 U.S. at 230.  These elements are considered under the "totality of the circumstances," however, not as "entirely separate and independent requirements to be rigidly exacted in every case."  *Id.* at 230–31.

Here, Turner attested to the source's reliability in his affidavit by noting: (1) that the source had provided useful tips over the preceding eight months; (2) that the source was experienced in the illegal drug trade and could reliably identify controlled substances; (3) that the source had seen large amounts of crack cocaine at Jones' Lark Street residence less than an hour before meeting with Turner; and (4) that Turner had corroborated some of this information by driving by the Lark Street house.  *United States v. Coffee*, 434 F.3d 887, 893–94 (6th Cir. 2006); *Allen*, 211 F.3d at 976.

Jones nevertheless complains that Turner's affidavit offered no more than a "blanket statement" to support the source's reliability.  Jones suggests that Turner ought to have specified the number of times that the source had previously provided reliable information.  Moreover, Jones argues that Turner's drive-by merely showed that Jones was present at the residence—it did not corroborate any supposed wrongdoing.  Maybe so.  But an affidavit is evaluated on the "adequacy of what it *does* contain"—not "what a critic might say should have been added."

*Allen*, 211 F.3d at 975 (emphasis added). Here, Turner's affidavit provided specific details from a source's first-hand observations. And the affidavit demonstrates the source's reliability by describing the police department's ongoing relationship with that source. So the issuing judge had a sufficient basis for finding probable cause.

*Mistaken Address*. Jones additionally claims that the mistaken address invalidated the warrant and thus the subsequent search. We review this question de novo. *United States v. Durk*, 149 F.3d 464, 465 (6th Cir. 1998).

A warrant's description of the place to be searched need not be "technically accurate in every detail." *Id*. But the description should allow an executing officer to identify the place to be searched. *Id.* The description should also reduce any real risk that the officer mistakenly searches the wrong spot. *Id.* Accordingly, minor inaccuracies will not necessarily invalidate a search warrant. *United States v. Pelayo-Landero*, 285 F.3d 491, 496 (6th Cir. 2002). Courts "routinely uphold" warrants with partial inaccuracies, so long as the description contains enough accurate information "to identify the place to be searched with particularity." *Id.* at 497. So even an incorrect address is not fatal if the rest of the description leads the officers in the right direction.

No one disputes that the affidavit provided the wrong address. But this mistake must be weighed against the rest of Turner's description of the Lark Street residence. Turner provided ample detail to identify the house: He described a "multi-colored brick sided and partially tan vinyl sided" single-family house with a "black roof" and "two twin windows with red shutters." Turner even attached photographs of the residence to his affidavit. So the executing officers could easily identify Jones' residence in spite of the incorrect address.

Jones argues that the incorrect address could have led the officers to search the wrong house. But that is unlikely: The address on the affidavit—594 Lark Street—does not exist in Brownsville. And as the district court noted, nearby residences are easily distinguishable from the photographs of Jones' place: One lacks a carport and another has a blue roof. Searching the wrong spot was thus unlikely—Turner's mistake did not invalidate the warrant.

*Tennessee Law.* Jones also claims that the search violated Rule 41 of the Tennessee Rules of Criminal Procedure. But this is a *federal* criminal proceeding, not a Tennessee proceeding. So the validity of the search warrant, even if obtained by local officers, depends on the requirements of the Fourth Amendment—not state rules of criminal procedure. *See United States v. Beals*, 698 F.3d 248, 263–64 (6th Cir. 2012). Moreover, the exclusionary rule "emanates from the Fourth Amendment," so there would be no basis for suppressing evidence in a federal proceeding, even supposing the violation of state criminal procedure. *Id.* at 263; *see also United States v. Wright*, 16 F.3d 1429, 1434 (6th Cir. 1994). And as discussed above, the search warrant complied with the Fourth Amendment.

Jones correctly notes that Tennessee Rule 41 "is intended to conform to Rule 41 of the Federal Rules of Criminal Procedure." Advisory Comm'n Comments, Tenn. R. Crim. P. 41. The similarity of the Tennessee rule to the federal rule does not change the fact that Tennessee law does not apply here. And even if we were to construe his argument as an attempt to invoke Federal Rule 41, the argument still fails. First, Jones argues that the search was based on a legally insufficient search warrant and supporting affidavit. *Id.* This claim is identical to Jones' constitutional claims—it thus fails for the reasons discussed above.

Second, Jones argues the officers violated Rule 41 by failing to knock prior to entering the residence. But the Supreme Court has recognized an exception to the general knocking

requirement where executing officers have a "reasonable suspicion" that knocking would be dangerous or futile. *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997). Turner sought and obtained a no-knock warrant. So the question is whether Turner's affidavit justified the issuing court's grant of no-knock authority. *United States v. Johnson*, 267 F.3d 498, 500 (6th Cir. 2001). And Turner's affidavit offered compelling reasons for a no-knock warrant: Jones allegedly had a gun and had a "history of violence" and prior arrests, including for firearm possession and domestic assault. This court has upheld no-knock warrants issued on the basis of more speculative risks, such as "lack of knowledge concerning the residence's occupants, the potential for destruction of evidence, and the general tendency for firearms to be present where drugs are sold." *Kelley v. McCafferty*, 283 F. App'x 359, 364 (6th Cir. 2008). So the issuing court here had more than enough reason to suspect that the search could be dangerous and thus to approve a no-knock warrant.

Jones nevertheless suggests that there was no exigency justifying a no-knock warrant, because Turner had previously arrested him without any escalation to violence. But in the context of *this* search, Turner had reason to suspect danger: A source had recently seen Jones with a firearm, and Jones had criminal history that included guns and violence. That was more than enough to support the "reasonable suspicion" necessary to justify a no-knock warrant.

\* \* \*

For these reasons, we **AFFIRM** the district court's denial of Jones' motion to suppress.