RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0282p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 19-5967

SAMER WALID ABDALLA,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Middle District of Tennessee at Cookeville.
No. 2:17-cr-00007-1—Eli J. Richardson, District Judge.

Argued:  August 4, 2020

Decided and Filed:  August 27, 2020

Before:  ROGERS, KETHLEDGE, and NALBANDIAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Andrew C. Brandon, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellant.  Sofia M. Vickery, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Andrew C. Brandon, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellant.  Sofia M. Vickery, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Robert McGuire, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

_____

## OPINION

_____

NALBANDIAN, Circuit Judge.  Challenges to warrants based on typographical errors or factual inaccuracies typically fall under this Circuit's clerical error exception.  We have

consistently found that inadvertent drafting mistakes, for instance transposing a number in a street address or listing an incorrect nearby address, do not violate the Fourth Amendment's prohibition on unreasonable searches and seizures. That is because those errors create little risk of a mistaken search or a general warrant granting police an unconstitutionally broad authority to conduct searches.

But Defendant Samer Abdalla contends that this case does not involve a regular clerical error. The Tennessee judge who signed the warrant permitting officers to search Abdalla's residence on New Hope Road only had jurisdiction in DeKalb County. But the warrant, in one place, listed an address on Carey Road in Trousdale County, Tennessee. This error resulted from the drafting officer's using a previous warrant as a template and failing to erase all vestiges of that document. As a result, the warrant permitting officers to search Abdalla's residence listed the wrong address, including the wrong county, in the authorization paragraph despite accurately describing Abdalla's home.

Abdalla makes much of this mistake. He argues that a warrant cannot be valid if it contains a mismatch between the residence in the authorization section and the residence that the police searched. Along with this theory of invalid formation, Abdalla also asserts that a judge's failure to notice an address outside his jurisdiction in a warrant's authorization section demands the inference that the judge impermissibly rubberstamped the warrant. Yet the affidavit supporting the warrant listed the correct address and county at the top of the first page. And the warrant itself directed officers to the correct address by providing step-by-step directions along with a detailed description of Abdalla's residence. So the warrant's singular incorrect address posed almost no chance of a mistaken search. Despite the government's irregular mistake, this clerical error case demands the usual result for technical mistakes that threaten no constitutional harm. We AFFIRM.

I.

In February 2017, the Tennessee Judicial Drug Task Force and the Drug Enforcement Administration began investigating Abdalla for suspected narcotics trafficking. Investigators used a confidential informant to execute a series of controlled drug buys from Abdalla's

residence. Agent Brandon Gooch then submitted a written application and affidavit for a warrant to search Abdalla's residence on New Hope Road for evidence of drug crimes. That affidavit described how officers prearranged the controlled drug buys from Abdalla and monitored the confidential informant during the process. The affidavit also listed Abdalla's correct street address, along with descriptions of his home and evidence that the police expected to find. Based on that information, Agent Gooch concluded that probable cause justified searching Abdalla's property.

After reviewing the affidavit, Judge Patterson, who had jurisdiction in DeKalb County, Tennessee, issued a warrant on June 8 authorizing officers to search Abdalla's residence. Like the affidavit, this warrant gave detailed directions to Abdalla's property and contained unique identifiers of Abdalla's residence, such as his trailer's color, the property's layout, an American flag in front of the home, and an auto detail sign at the driveway's entrance. This description at the beginning of the warrant correctly directed officers to Abdalla's precise New Hope Road address in DeKalb County. But the warrant's final paragraph "commanded" officers "to search the . . . premises located at 245 Carey Road, Hartsville, Trousdale Tennessee." (R. 20-1, Search Warrant, Page ID # 59.) Agent Gooch testified that the Carey Road address came from using a previous warrant as a template. Although Judge Patterson had jurisdiction over Abdalla's residence in DeKalb County, he lacked jurisdiction in Trousdale County, which encompassed the Carey Road property listed on the warrant's final page.

Despite that error, Agent Gooch led approximately eighteen other officers on June 9 to the New Hope Road address to execute the search. The officers arrived at Abdalla's residence in DeKalb County and loudly announced their presence. But no one responded. So officers entered Abdalla's home by force and found him, along with his girlfriend, in bed. Despite the officers' commands for the two to put their hands up, the couple failed to comply. With the pair unresponsive, one officer tried to remove Abdalla's girlfriend from the bed. That caused Abdalla to spring up and "lunge[] with a fist" towards the officers. (R. 104, Sentencing Tr., Page ID # 713.) The officers repeatedly told Abdalla to show them his hands and to settle down, but Abdalla did not comply. Bizarrely, Abdalla took a sheet from the bed and tried to hide under it. After officers removed the sheet, Abdalla remained aggressive. So the officers warned Abdalla

that they would use a taser.  But the threats, along with a malfunctioning taser, failed to dissuade Abdalla.  The scuffle turned into Abdalla's wrestling with the officers and then attempting to grab an officer's rifle.  After officers successfully placed a plastic restraint on Abdalla, he broke free.  Officers later testified that they had never seen anyone break free of a plastic restraint.  Then, despite Abdalla's attempts to bite them, officers successfully handcuffed Abdalla.  After the struggle, officers asked Abdalla if he had any contagious diseases; Abdalla immediately and coherently replied that he had hepatitis C.

During the search, officers located and seized drugs, drug paraphernalia, and firearms.  In a post-arrest interview twelve minutes after the raid, Abdalla admitted that most of the contraband belonged to him.  In another interview three days later, Abdalla claimed that he was so high during the search that he believed he was "in a video game" while fighting the officers. (R. 52, Tr. of Proceedings, Page ID # 325.)  He also denied any memory of physically engaging the officers.  But Abdalla confirmed that the guns and drugs belonged to him.

The government indicted Abdalla for being a felon in possession of a firearm and the parties discussed a plea agreement.  Then Abdalla moved to suppress evidence collected in the search, challenging the warrant's validity.   He also sought a *Franks* hearing to evaluate statements made in the affidavit supporting the warrant.  Abdalla argued, among many claims, that: (1) the warrant lacked probable cause and was invalid because it authorized a search at the wrong address, (2) the affidavit failed to show the confidential informant's veracity, (3) Abdalla did not give a knowing and voluntary *Miranda* waiver, and (4) the warrant and affidavit contained material omissions and misstatements.  After a suppression hearing, the district court granted suppression of Abdalla's statements made immediately after his arrest on June 9 due to a *Miranda* violation, but rejected all of Abdalla's other claims.

After this ruling, Abdalla's counsel discovered details about the confidential informant that put the informant's credibility in question.  The informant had committed many serious crimes, including theft and domestic assault, suffered from heroin addiction, and received compensation for executing controlled buys.  The government never disclosed that information to Abdalla's counsel, according to the district court, even though it should have.  So Abdalla

asked the district court to revisit the evidentiary suppression and *Franks* issue.  But the district court denied that motion.

After the government filed a superseding indictment, Abdalla entered a conditional guilty plea. Between the superseding indictment and the sentencing hearing, the case moved from Judge Crenshaw to Judge Richardson.  Before sentencing, the presentence report recommended a six-level Guidelines enhancement under U.S.S.G § 3A1.2(c)(1) for assaulting officers.  Abdalla disagreed, finding the enhancement inapplicable because he lacked the mens rea during the conflict to knowingly attack an officer, given that he thought he was in a video game.  Abdalla also noted that Judge Crenshaw had found that he lacked mens rea to knowingly and voluntarily waive his *Miranda* rights when talking to officers after the search.  So Abdalla reasoned that Judge Crenshaw's *Miranda* ruling acted as law-of-the-case, compelling Judge Richardson to find that Abdalla lacked the mens rea to knowingly assault a police officer.  The district court rejected that argument and imposed a 168-month sentence.  Abdalla now challenges that sentencing decision, along with the district court's denial of his motion to suppress.

II.

Abdalla argues that the district court wrongly denied his motion to suppress evidence of guns and drugs seized at his residence because the government relied on a defective warrant to execute the search.  "[T]he text of the Fourth Amendment does not specify when a search warrant must be obtained." *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2173 (2016) (alteration in original) (quoting *Kentucky v. King*, 563 U.S. 452, 459 (2011)).  Yet the Fourth Amendment's prohibition on unreasonable searches and seizures contemplates a "limitation upon their issuance." *Id.* (quoting *California v. Acevedo*, 500 U.S. 565, 581 (1991) (Scalia, J., concurring)).  When a warrant contains a grave mistake at issuance, such as omitting items to be seized, it is "so obviously deficient that we must regard the search as 'warrantless' within the meaning of our case law." *Groh v. Ramirez*, 540 U.S. 551, 558 (2004).  Analyzing warrants for issuance errors rises above "dealing with formalities" because "[t]he presence of a search warrant serves a high function." *McDonald v. United States*, 335 U.S. 451, 455 (1948).  Still, "[a]n error in description does not, however, automatically invalidate a search warrant." *United States v. Pelayo-Landero*, 285 F.3d 491, 496 (6th Cir. 2002).

When reviewing a defendant's claim that a search violated the Fourth Amendment and the lower court wrongly denied a motion to suppress, "this Court reviews the district court's factual findings for clear error, and its legal conclusions *de novo*." *United States v. Adams*, 583 F.3d 457, 463 (6th Cir. 2009). "When a district court has denied a motion to suppress, this Court reviews the evidence 'in the light most likely to support the district court's decision.'" *Id.* (quoting *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999)).

Abdalla first objects to how the court issued the warrant. He argues that "a document that gives authority to search a *different* residence in a different county" does not "constitute a warrant under the Fourth Amendment." (Appellant Br. at 31.) So Abdalla casts this case as different from typical clerical error cases involving "transposed digits in addresses and neighboring houses." (*Id.* at 32.) Still, he admits that "almost no caselaw across the country" addresses the question of overturning a warrant because its authorization section lists the wrong residence in the wrong county. (*Id.*) Yet he insists that this Court must recognize that mistake as a Fourth Amendment violation—Abdalla asserts that the warrant was invalid because it only established probable cause to search the New Hope Road address, and not the Carey Road address. That mismatch between the probable cause and the residence to be searched purportedly places this case outside the clerical error case line.

It is true that most of this Circuit's clerical warrant error cases focus on less egregious errors than listing the incorrect residence in a county outside the authorizing judge's jurisdiction. For instance, a warrant that contained "the transposition of the house numbers from 4216 to 4612" and mixed up east and west did not violate the Fourth Amendment. *United States v. Durk*, 149 F.3d 464, 465–66 (6th Cir. 1998). Such "descriptive errors" are curable when the warrant "sufficiently describes [the correct] house" by providing "unusual feature[s]." *Id.* at 466. To decide whether a warrant drafting mistake violates the Fourth Amendment, we ask whether "the inaccuracies in the warrant [would] lead to a mistaken search of other premises." *Id.* That is because "[t]he evil that the framers of the Constitution were trying to eradicate with the particularity requirement was the so-called general warrant that allowed officers to search at random." *Id.* If a warrant describes a residence specifically enough to (1) "enable the executing officer to locate and identify the premises with reasonable effort" and (2) prevent the government

from mistakenly searching a different residence, then this Court views the warrant's inaccuracies as benign clerical errors. *See id.* at 465–66.

Abdalla claims that the government relied on a warrant invalid from the outset because probable cause supporting a search at his address in DeKalb County did not support a search in Trousdale County. Citing only *United States v. Hodson*, 543 F.3d 286 (6th Cir. 2008), Abdalla argues that a warrant containing probable cause for a search at one address but listing a different address in the authorization paragraph is no warrant at all. In *Hodson*, the "warrant was defective for lack of probable cause" because the officers "established probable cause for one crime . . . but designed and requested a search for evidence of an entirely different crime." *Id.* at 292. But nothing in *Hodson* touches the issue of probable cause being mismatched to an incorrect address listed because of a clerical error.

We agree that, under *Hodson*, the government cannot execute a search for evidence of one crime based on probable cause that the defendant committed a different crime. But we disagree with Abdalla that the same logic applies to incorrect street addresses. He tells us that, broadly speaking, the "thing to be searched for [must] match[] the probable cause asserted." (Appellant Br. at 34.) But that reasoning contravenes our clerical error cases. Unlike failure to establish probable cause for the crime justifying the search, listing the wrong address does not "automatically invalidate a search warrant." *Pelayo-Landero*, 285 F.3d at 496. Under Abdalla's reading of *Hodson*, that proposition would not be true; if the government needed to provide probable cause for the address listed on the warrant, then every warrant listing a wrong address would fail for lack of probable cause. But this court has upheld many technically defective warrants, including a warrant listing an address that "d[id] not exist" within the authorizing judge's jurisdiction. *United States v. Jones*, 707 F. App'x 317, 320 (6th Cir. 2017). Thus, *Hodson* does not show that a warrant supported by probable cause to search the defendant's address must fail for mismatched probable cause if its authorization section lists an incorrect address in a county outside the judge's jurisdiction. So Abdalla's probable cause argument falls short.

In the end, Abdalla's probable cause mismatch theory contradicts our established clerical error framework. So Abdalla's warrant formation argument is unavailing.

III.

Alternatively, Abdalla claims that the warrant did not describe his property with particularity. "The test for determining whether the description in the warrant is sufficient to satisfy the particularity requirement is whether 'the description is such that the officers with a search warrant can with reasonable effort ascertain and identify the place intended.'" *United States v. Gahagan*, 865 F.2d 1490, 1496 (6th Cir. 1989) (quoting *Steele v. United States*, 267 U.S. 498, 503 (1925)). Abdalla believes that the mistaken address listed in the warrant shows that the warrant's description of his residence cannot pass constitutional muster. Still, "[c]ourts routinely have upheld warrants . . . 'where one part of the description of the premises to be searched is inaccurate but the description has other parts which identify the places with particularity.'" *Durk*, 149 F.3d at 466 (quoting *United States v. Gitchco*, 601 F.2d 369, 372 (8th Cir. 1979)). Abdalla contends that a warrant containing both an incorrect address and a correct address, despite only describing the property at the correct address, does not satisfy the Fourth Amendment. To succeed, he must meet this Circuit's standard:

> The test for determining whether a search warrant describes the premises to be searched with sufficient particularity [is] . . . whether the description is sufficient "to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched."

*Pelayo-Landero*, 285 F.3d at 496 (quoting *Gahagan*, 865 F.2d at 1496). Even though a warrant containing the wrong address can sometimes risk a mistaken search, such an "error does not invalidate a search warrant if the warrant includes other specific descriptors that remove the probability that the wrong location could be searched[.]" *United States v. Crumpton*, 824 F.3d 593, 612 (6th Cir. 2016).

Although the warrant authorizing the search of Abdalla's residence wrongly listed a Carey Road address in the authorization section, most of the warrant unambiguously described Abdalla's New Hope Address. First, the warrant gave directions to the correct address, directing officers to travel "west on I-40 [and] take exit ramp 254 . . . travelling south 6.8 miles to Dekalb County line" and then to enter "the driveway of 332 New Hope Road," Abdalla's correct address. (R. 20-1, Search Warrant, Page ID # 57.) The warrant then described the property as

including a "white double wide trailer with a green front porch and a black shingle roof," along with an American flag on the front porch and an "auto detail sign" in the driveway. (*Id.*) These unique descriptors, along with correct directions to the address, strongly suggest that officers would not have searched an incorrect residence. This Circuit has found that describing unique features can render warrants valid even when they list the wrong address. *Durk*, 149 F.3d at 466. In the warrant covering Abdalla's property, details about a white trailer with a green porch, a black shingle roof, and a unique sign in the driveway constitute unique identifiers under *Durk*. So even if officers arrived at 254 Carey Road, the mistaken address listed in the warrant, there was almost no chance that the property located there would at all resemble the description in the warrant. So the likelihood of a mistaken search was practically nil.

What is more, Agent Gooch's role as both the executing officer and the warrant's affiant also suggests that the search did not violate the Fourth Amendment. In *Durk*, this Circuit determined that an inaccurate warrant would be less likely to produce a mistaken search because "the executing officer . . . was also the affiant" and was familiar with the property to be searched. *Id.* at 466. Abdalla counters that Agent Gooch's role in both the warrant drafting and the search does not "save this constitutionally deficient warrant," citing *United States v. Williamson*, 1 F.3d 1134, 1136 (6th Cir. 1993). (Appellant Br. at 38.) But that misreads *Williamson*. There, the court acknowledged that "an executing officer's knowledge may be a curing factor[.]" *Williamson*, 1 F.3d at 1136. And the court only found that the officer's knowledge of the case cannot save a warrant when it acts as "the *sole* source of information identifying" the property to be searched. *Id.* So *Williamson* carries little weight in a case in which the warrant provides a detailed description of a property. In short, Agent Gooch's dual role as the affiant and the executing officer, although not dispositive, reduced the likelihood of a mistaken search.

All in all, the warrant (1) provided detailed directions to Abdalla's New Hope Road address, (2) described a "white double wide trailer with a green front porch and a black shingle roof," along with an American flag on the front porch and an "auto detail sign" in the driveway, and (3) identified the correct address and county, except for one sentence on the final page. (R. 20-1, Search Warrant, Page ID # 57, 59.) It is nearly unfathomable, given those particular identifiers and Agent Gooch's familiarity with the residence, that officers would have arrived at

an incorrect address and then found a residence so resembling the warrant's description that they would have performed a mistaken search. So we are unpersuaded by Abdalla's claim that the warrant failed to describe his residence with particularly and granted officers overly broad authority to search multiple residences.

IV.

Next, Abdalla identifies two purported probable cause defects in the warrant. First, he complains that the judge who authorized the warrant did not act as a "neutral judicial officer to assess whether the police [had] probable cause" to search his property. *Steagald v. United States*, 451 U.S. 204, 212 (1981). Second, Abdalla claims that the confidential informant who conducted the controlled buys was unreliable and the government failed to provide independent corroboration of the allegedly unreliable informant's statements. Arguing that the government offered scant indicia of reliability for the informant, Abdalla concludes that the warrant lacked probable cause because it relied on a flawed informant.

Search warrants must be approved by a "neutral and detached" magistrate "capable of determining whether probable cause exist[ed] for the requested arrest or search." *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972). In other words, the authorizing judge cannot "serve merely as a rubber stamp for the police." *United States v. Frazier*, 423 F.3d 526, 537 (6th Cir. 2005). Defendants bear the burden of showing that a judge so deficiently reviewed a warrant as to have acted as a rubber stamp. *Id.*

Abdalla claims that the authorizing judge failed to review the warrant as a neutral and independent magistrate because "[t]he incorrect address in the warrant's authorization section would have stuck out like a sore thumb[.]" (Appellant Br. at 40.) Rephrased, Abdalla argues that the reviewing judge, who lacked authority to authorize a search in Trousdale County, did not read the warrant with the scrutiny required from a neutral and detached magistrate; otherwise the judge would have noticed the jurisdictional error. Abdalla relies on *United States v. Decker*, 956 F.2d 773, 777 (8th Cir. 1992), where the Eighth Circuit found that failure to notice a "glaring omission" supported the inference that the authorizing judge did not read the warrant. There, the court found a warrant invalid because it failed to list the evidence to be seized.

Abdalla believes a warrant inadvertently listing a county outside the authorizing judge's jurisdiction is a glaring error similar to the omitted evidence in *Decker*. We disagree.

To be fair, this Circuit has not yet addressed whether the authorizing judge could fail to notice a warrant mistakenly listing a county outside his jurisdiction without having rubberstamped the warrant. Although "[c]ourts must proceed cautiously whenever an error, no matter how seemingly insignificant, appears within the four corners of a warrant[,]" warrants containing an "unintentional drafting oversight" are not always invalid. *United States v. Watson*, 498 F.3d 429, 434 (6th Cir. 2007). In turning immediately to the good-faith exception without deciding the warrant's validity in *Watson*, we determined that a reviewing judge's error in overlooking an address in the warrant's application section did not call for suppression because the rest of the warrant thoroughly described the property. What is more, we have denied arguments that failing to notice a warrant application error "support[s the] claim that the magistrate issued the warrant without reading the affidavit." *Frazier*, 423 F.3d at 537. That is because a defendant must show "adequate support for his assertion that the issuing judge did not conduct an objective evaluation of the request for a warrant." *United States v. Patterson*, 587 F. App'x 878, 884 (6th Cir. 2014).

Given those cases, it is perhaps an open question whether our precedent permits inferring that a judge never read a warrant simply because he did not notice an error that, left unchecked, violated the Fourth Amendment. But even if that inference is permissible, as the Eighth Circuit concluded, the omission here does not match the severe omission in *Decker*. There the warrant failed to discuss the items to be seized, and failure to notice that a warrant omitted essential information meant that the authorizing judge did not act as a neutral and detached magistrate. Here, Abdalla only complains that Judge Patterson failed to notice that the warrant's final page contained an inaccurate address, not that the warrant omitted wholesale any vital components. Given that the wrong address only appears once in the warrant and that the warrant also listed the correct address, along with directions to and a description of it, Abdalla's analogy to *Decker* is unpersuasive. In short, Judge Patterson's failure to notice an incorrect address outside his jurisdiction does not show that he failed to read the warrant as required for a judge to "perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police."

*United States v. Leon*, 468 U.S. 897, 914 (1984) (quoting *Aguilar v. Texas*, 378 U.S. 108, 111 (1964), *abrogated on other grounds by Illinois v. Gates*, 462 U.S. 213 (1984)).

Separate from his argument that including the wrong county invalidated the warrant, Abdalla claims that the information given by the confidential informant supporting the warrant lacked reliability or corroboration. That is because the informant not only had a criminal and drug use history, undermining the government's position that he was a "good citizen," but also received payment for executing controlled buys. (R. 79, Order, Page ID # 513–14.) Basing probable cause on an unreliable informant, absent independent corroboration, can mean that the government lacked probable cause to execute the warrant. *See United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010). Usually the government avoids that problem by having the warrant affiant "attest[] with some detail" about the informant's reliability. *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000). Yet the government does not claim that Agent Gooch attested to the informant's reliability, but argues instead that "independent police corroboration of the informant's information" supported probable cause for searching Abdalla's residence. (Appellee Br. at 22–25.) So it seeks to apply the rule in *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000), that "information received from an informant whose reliability is not established may be sufficient to create probable cause when there is some independent corroboration by the police of the informant's information."

The government claims that the informant's identity being "known to the officers[,]" even if by an anonymous number, and his "witness[ing of] illegal activity on the premises searched" provided "sufficient indicia of reliability." *United States v. Dyer*, 580 F.3d 386, 391–92 (6th Cir. 2009). Still, Abdalla complains that the affidavit lacked many indicia of reliability recognized by this Circuit. Those include: (1) statements about past experiences with the informant, (2) naming the informant to the magistrate, (3) field-testing drugs acquired from the controlled purchase, (4) a pat down before and after the controlled buy, (5) the use of pre-recorded buy money, and (6) officers directly monitoring the informant during the purchase. Even so, we do not decide probable cause questions under a factors test or a bright-line rule; instead we use a "totality of the circumstances approach[.]" *Gates*, 462 U.S. at 230. And we also grant "great deference" to "the magistrate's probable-cause determination," only

overturning the probable cause finding "if the magistrate arbitrarily exercised his or her authority[.]" *United States v. Christian*, 925 F.3d 305, 311–12 (6th Cir. 2019) (quoting *Gates*, 462 U.S. at 236; *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001)). And, contrary to Abdalla's approach, an "affidavit is judged on the adequacy of what it does contain, not on what it lacks[.]" *Allen*, 211 F.3d at 975.

Despite some imperfections with the informant, the affidavit established probable cause to search Abdalla's home by providing corroborating evidence. Usually invalidating a warrant for lack of probable cause involves something like "an anonymous tip sparse in detail and wholly uncorroborated by the police" or "a merely conclusory statement of the affiant's belief in an informant's past credibility, unsupported by further detail[.]" *Id.* at 975–76. That is not the case here. An affidavit describing both an informant's controlled purchase "while under police surveillance" and "the officers' arrangements for the controlled purchase" gives "sufficient corroborating information" to uphold a lower court's finding that probable cause existed. *United States v. Archibald*, 685 F.3d 553, 557 (6th Cir. 2012). The affidavit here included that information, describing how officers "issued monitoring equipment and drug buy money" to the informant and "prearranged" a drug deal at Abdalla's residence on three occasions. (R. 20-1, Aff., Page ID # 52.) And affidavits need not be perfect to establish probable cause. *Hale v. Kart*, 396 F.3d 721, 725 (6th Cir. 2005) ("Affidavits do not have to be perfect, nor do they have to provide every specific piece of information to be upheld[.]"). So the controlled buys at Abdalla's home, as described in the affidavit, are "specific facts present[ing] ample evidence of probable cause that drugs . . . would be found at" Abdalla's residence. *Id.* So even if the government did not rely on an ideal informant, the affidavit provided enough corroborating evidence for probable cause to search Abdalla's residence.

All considered, the defects in the warrant's issuance do not violate the Fourth Amendment's bar on unreasonable searches and seizures.[1] So the district court did not err by denying Abdalla's motion to suppress evidence.

---

[1]The parties dispute whether the *Leon* good-faith exception for warrant errors applies. Because Abdalla's Fourth Amendment claims lack merit, we need not reach the good-faith analysis. *See Durk*, 149 F.3d at 466

V.

Finally, Abdalla argues that the sentencing judge incorrectly applied a Sentencing Guidelines enhancement for assaulting an officer who was searching Abdalla's home. The Sentencing Guidelines impose a six-level increase "[i]f, in a manner creating a substantial risk of serious bodily injury, the defendant . . . knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense[.]" U.S.S.G. § 3A1.2(c)(1). Abdalla focuses on the enhancement's mens rea requirement, arguing that "he was too high to form the requisite intent to assault the officers[.]" (Appellant Br. at 49.) That is because the fentanyl and methamphetamine in his system allegedly made him think that he was in a video game during the confrontation. But the lower court rejected Abdalla's position because his actions and statements after the scuffle reflected his grasp on reality. Abdalla now contends that the lower court erred by: (1) wrongly discounting his statement about believing he was in a video game, (2) ignoring statements from the officers suggesting that he behaved strangely during the search, and (3) not deferring to a previous judge's mens rea ruling.

For challenges to a district court's application of the Federal Sentencing Guidelines, this Circuit generally reviews factual findings for clear error and legal conclusions de novo. *United States v. Coleman*, 664 F.3d 1047, 1048 (6th Cir. 2012). But the standard for reviewing a Guidelines enhancement applied to a given fact pattern is somewhat murky.[2] *See United States v. Bell*, 766 F.3d 634, 636 (6th Cir. 2014) ("Our circuit has not settled on the proper standard of review for assessing such enhancements."); *see also United States v. Uminn*, No. 19-1638, 2020 WL 3958199, at *2 (6th Cir. July 13, 2020) ("Our circuit has not, however, settled on a clear standard of review for assessing a district court's application of sentencing enhancements."). That said, the Supreme Court has held that applications of the Sentencing Guidelines involving mixed questions of law and fact receive "deferential review" and not de novo review. *Buford v.*

---

("Because we find the search warrant complies with the requirements of the Fourth Amendment, we need not reach the government's alternative argument that the good faith exception applies to this case.").

[2]Neither party makes much of this ambiguity Abdalla states that the proper standard gives due deference to the lower court's application of the Guidelines to the facts, while the government contends that mixed questions of law and fact receive de novo review. Because the parties do not engage with this issue and Abdalla cannot prevail under any plausible form of deferential review, we need not determine the precise review standard.

*United States*, 532 U.S. 59, 64 (2001). So "the district court's application of the guidelines to the facts" should receive "due deference." *Uminn*, 2020 WL 3958199, at \*2. And district courts receive "even greater deference" when their "findings are based on determinations regarding the credibility of witnesses[.]" *Anderson v. City of Bessemer*, 470 U.S. 564, 575 (1985).

First, Abdalla claims that the district court erred by not giving proper weight to his statement, made three days after the search, that he believed he was in a video game when he attacked the officers. During his interview with the police, Abdalla stated that he did not remember physically struggling with the officers and that he only became aware of his surroundings after being handcuffed. At sentencing, the district court did not accept Abdalla's contention that this statement showed that he lacked the requisite mens rea. Noting that the statement was "not . . . under oath," the district court instead gave stronger weight to other evidence showing Abdalla's lucidity during the raid, including his coherent statements to the officers about his medical condition. (R. 104, Sentencing Tr., Page ID # 748.) Still, Abdalla argues that the district court "appear[ed] to discount the weight of the statement due to the mistaken belief that it [was] a mere 'recounting,' when in fact the recorded statement . . . was validly entered as an exhibit." (Appellant Br. at 50.) But he cites no cases explaining why the sentencing judge erred by downplaying the statement's strength as an exhibit and finding the statement non-credible because Abdalla did not make it under oath. And the sentencing judge validly reasoned that self-serving testimony not given under oath did not "defeat[] the Government['s]" argument under a preponderance of the evidence standard. (R. 104, Sentencing Tr., Page ID # 748.) The judge did so because the government presented evidence that Abdalla understood and replied to questions posed by officers after the altercation. So the sentencing judge found that evidence more compelling than Abdalla's statement that he was so high he believed he was in a video game.

This determination over Abdalla's mental state receives deference. *See United States v. Ingle*, 460 F. App'x 593, 596 (6th Cir. 2012) (reviewing for clear error a district judge's determination that the defendant's alleged depression did not prevent him from forming the mens rea for assaulting an officer under U.S.S.G § 3A1.2(c)(1)). And Abdalla complains only that the court found his unsworn testimony given three days after the search less credible than the

officers' statements about Abdalla's coherence.  At best, the evidence points both ways over Abdalla's mental state.  And that is not enough to warrant reversal under any plausible form of deference, be it clear error or a less exacting standard.

Next, Abdalla asserts that the sentencing judge "ignore[d] key evidence regarding the scuffle."  (Appellant Br. at 50.)  During his conflict with the officers, Abdalla covered himself with a sheet to hide from officers and displayed a surprising amount of strength by ripping apart plastic restraints used by the officers. Abdalla claims that this unusual behavior supports his claim that he was too high to form the necessary mental state.  And he believes the lower court improperly minimized this evidence while giving too much credence to testimony from the officers.  This argument reformulates Abdalla's complaint about the sentencing judge's decision not to find Abdalla's video game statement credible.  Here, the sentencing judge weighed testimony about the post-arrest questioning, which suggested that Abdalla had enough awareness to confront the police and answer questions, against Abdalla's bizarre behavior.  And the judge concluded that, although Abdalla was high, he still knew that he was assaulting police officers. A defendant's actions can provide "evidence that he acted with the intent to commit" a crime, even when there is conflicting record evidence about that mental state.  *Ingle*, 460 F. App'x at 596.  Under that standard, Abdalla's citation of conflicting evidence does not require reversal. Because the sentencing judge relied on evidence showing Abdalla's lucid state shortly after the conflict, the judge's weighing of the evidence at Abdalla's sentencing does not suggest reversible error under deferential review.

Finally, Abdalla claims that Judge Richardson, who inherited the case from Judge Crenshaw, wrongly ignored Judge Crenshaw's determination that Abdalla was too high during the search to voluntarily, knowingly, and intelligently waive his *Miranda* rights.  Judge Crenshaw, before exiting the case, found that Abdalla lacked the mental state to waive his *Miranda* rights when questioned during the search.  Abdalla believes that ruling should have precluded the sentencing enhancement because it showed he lacked the mens rea to knowingly assault officers.  To support that argument, Abdalla relies on a law-of-the-case theory that "findings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation." *Dixie Fuel Co. v. Dir., Office of Workers' Comp. Programs*, 820 F.3d 833,

843 (6th Cir. 2016). Abdalla asserts that Judge Crenshaw's finding that Abdalla lacked capacity to waive his *Miranda* rights should have controlled Judge Richardson's determination of Abdalla's mental state during the scuffle. So Abdalla contends that Judge Richardson erred by finding that Abdalla's "waiver of *Miranda* rights is a different question than whether he was in a frame of mind where he could form the mens rea to commit an assault." (R. 104, Sentencing Tr., Page ID # 748–49.) Because Judge Richardson did not thoroughly distinguish between the *Miranda* mens rea and the sentencing enhancement mens rea, both of which contain a "knowing requirement," Abdalla believes that the sentencing judge wrongly applied the enhancement.

Yet *Miranda* waivers and the Guidelines enhancement for assaulting an officer are distinct legal issues. Defendants must knowingly and intelligently waive their *Miranda* rights, which courts analyze given the "totality of the circumstances." *Garner v. Mitchell*, 557 F.3d 257, 260 (6th Cir. 2009). Under that inquiry, courts also look to two "dimensions," "voluntariness and comprehension," to decide whether a defendant freely and knowingly chose to talk with police despite *Miranda* protections. *Id.* at 263. For the § 3A1.2(c)(1) assaulting an officer enhancement, the defendant must (1) intend to assault another person, (2) know that this person is an officer, and (3) recklessly create a substantial risk of injury. Although both mens rea requirements contain a knowing requirement, knowingly assaulting an officer differs from a defendant comprehending and voluntarily waiving his *Miranda* rights. So we are unpersuaded that Judge Richardson committed a reversible error by finding the two legal questions distinct.

VI.

For the reasons above, we AFFIRM.