RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0106p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 23-1585

TOMMY LAMONT KIRTDOLL,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:22-cr-00064-1—Jane M. Beckering, District Judge.

Decided and Filed:  May 8, 2024

Before:  SUTTON, Chief Judge; WHITE and THAPAR, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  LaRissa D. Hollingsworth, DREW, COOPER & ANDING, P.C., Grand Rapids, Michigan, for Appellant.  Erin K. Lane, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

───────────────

## OPINION

───────────────

THAPAR, Circuit Judge.  Police searched Tommy Kirtdoll's house with a warrant that was largely accurate.  Nonetheless, Kirtdoll argues the warrant's few mistakes rendered the search unconstitutional.  The district court disagreed, and so do we.

I.

In southwest Michigan, detectives on a multijurisdictional task force were investigating Tommy Kirtdoll. They believed he was leading a drug-trafficking organization. While an undercover detective facilitated drug deals with Kirtdoll and his girlfriend, other task force members followed the pair as they traveled to and from the deals.

After each sale, Kirtdoll or his girlfriend returned to the same house. Once the task force had witnessed several deals, the undercover detective sought a search warrant for that house. The warrant application contained a detailed physical and geographic description. It explained that the house was the first one on the north side of Lizzi Street—a light blue, single-story home with white trim, bordering Carberry Road to the west. The front door faced south, and the driveway extended in the same direction toward Lizzi Street. A red star decorated the house's west side. The detective also explained that the house was "commonly referred to as 893 Carberry Road," and he included the house's tax identification number. R. 38-1, Pg. ID 75. Finally, the application noted the property owner's name was Ruthie Cross.

A Michigan judge authorized the warrant. When officers executed it, they found drugs and distribution equipment. Based on that evidence, a federal grand jury indicted Kirtdoll on multiple drug offenses relating to methamphetamine, cocaine, and cocaine base.

Kirtdoll moved to suppress the evidence, citing three errors in the warrant. First, Kirtdoll's address was not 893 Carberry Road. That address belonged to a house adjacent to Kirtdoll's. Second, the tax identification number in the warrant transposed two digits. That mistaken number corresponded to the actual 893 Carberry Road. And third, Ruthie Cross owned the property at 893 Carberry Road, not Kirtdoll's house. In Kirtdoll's view, those mistakes created an unreasonably high likelihood that 893 Carberry would be searched instead of his own property. Thus, he argued, the warrant lacked particularity. *See* U.S. Const. amend. IV.

The district court denied Kirtdoll's motion. It held that the warrant's other accurate descriptors were particular enough to satisfy the Fourth Amendment. Kirtdoll then pled guilty, reserving the right to appeal the district court's denial.

II.

We review the warrant's particularity de novo. *United States v. Gahagan*, 865 F.2d 1490, 1496 (6th Cir. 1989).

The Fourth Amendment requires search warrants to "particularly describ[e] the place to be searched." U.S. Const. amend. IV. That means they need enough detail for the executing officer to "ascertain and identify the place intended" with "reasonable effort." *Steele v. United States*, 267 U.S. 498, 503 (1925). This requirement doesn't mandate perfection. *See United States v. Wagoner*, 836 F. App'x 374, 378–79 (6th Cir. 2020); *Groh v. Ramirez*, 540 U.S. 551, 558 (2004). Instead, we ask whether the warrant was so flawed that it created a "reasonable probability" officers would search the wrong premises. *See United States v. Abdalla*, 972 F.3d 838, 846–47 (6th Cir. 2020) (stating that the mere possibility of a mistaken search doesn't violate the Fourth Amendment). That will almost never be the case when the warrant contains some information that "indisputably applie[s]" only to the target premises, even if "many descriptors in the warrant" are inaccurate.* *Wagoner*, 836 F. App'x at 379.

A.

Kirtdoll argues that the warrant's incorrect address, tax number, and ownership information rendered it insufficiently particular. His challenge fails. The warrant sufficed because it contained three descriptors that indisputably applied only to Kirtdoll's house and clearly identified it as the premises to be searched.

First, the warrant unambiguously described the house's geographic location. It explained that the house was "the first structure on the north side of Lizzi Street" and was on the "east side

---

*Ordinarily, we limit our review of a warrant's constitutionality to its four corners. *See, e.g.*, *United States v. Lewis*, 81 F.4th 640, 646 (6th Cir. 2023). But our particularity cases routinely consider a warrant's context. *See, e.g.*, *Abdalla*, 972 F.3d at 846–47 (highlighting the officer's role as both executing officer and affiant); *Wagoner*, 836 F. App'x at 379 (contrasting the warrant's description of target property with "other structures on the property" to show particularity); *United States v. Bucio-Cabrales*, 635 F. App'x 324, 332 (6th Cir. 2016) (explaining why the target apartment was "readily distinguishable" from incorrect property listed in the warrant). That's for good reason. The particularity inquiry focuses on the executing officer's perspective, asking whether the officer could accurately identify the target property with the information he had. It's often difficult to answer that question without considering context. For example, a warrant for a blue house would be crystal clear in a neighborhood of red apartments but insolubly ambiguous in a neighborhood of blue houses.

of Carberry Road." R. 38-1, Pg. ID 75. The warrant also noted that Kirtdoll's front door faced south, and his driveway ran the same direction from the house to Lizzi Street. As Kirtdoll himself pointed out, that description couldn't have applied to 893 Carberry. That's because 893 Carberry "does not have a driveway accessible off Lizzi[] Street." R. 38, Pg. ID 70. Thus, the warrant contained "detailed directions" to Kirtdoll's house that couldn't have led officers anywhere else. *See Abdalla*, 972 F.3d at 846–47.

Second, the warrant gave a detailed description of Kirtdoll's house. It described the house as a "one-story, single-family dwelling" painted light blue with white trim. R. 38-1, Pg. ID 75. We've repeatedly pointed to layout and color when upholding otherwise faulty search warrants. *See, e.g.*, *Abdalla*, 972 F.3d at 846 ("white double wide trailer with a green front porch and a black shingle roof"); *United States v. Pelayo-Landero*, 285 F.3d 491, 497 (6th Cir. 2002) ("[T]he warrant describes the particular trailer by color, by a certain exterior trim, and by a wooden deck."); *Bucio-Cabrales*, 635 F. App'x at 332–33 ("[s]ingle-family, two-story residence with tan brick and tan siding"). As in those cases, the warrant's inclusion of layout and color gave officers on the ground a clear picture of the target house. That's especially true here, as the only incorrect house Kirtdoll thinks officers could've searched—893 Carberry—is white, not blue. Thus, the warrant's description of Kirtdoll's house rendered the likelihood that officers would mistakenly search 893 Carberry "practically nil." *Abdalla*, 972 F.3d at 846.

Finally, the warrant included a unique, unmistakable identifier. It stated that Kirtdoll's house had a red star affixed to its west side. Unique identifiers like decorations are especially informative; geographic directions can be unclear, and multiple houses in a neighborhood might look similar. *Cf. United States v. Durk*, 149 F.3d 464, 466 (6th Cir. 1998). But a unique decoration or lawn feature sets otherwise similar houses apart. That's why, for example, we upheld the warrant in *Durk*. There, the warrant both misstated the target's address and gave the wrong geographic location. *See id.* at 465–66. The warrant did describe the house as a "single family red brick ranch home," but "brick, ranch style homes" were "common" in the neighborhood. *Id.* Despite those inaccuracies and ambiguities—far more severe than the ones here—the property's unique metal storage shed left executing officers no doubt about which property to search. *Id.* at 466; *see also Abdalla*, 972 F.3d at 846 (explaining that a "unique sign"

helped distinguish the target property).  Just so here.  The red star identified Kirtdoll's house with pinpoint precision.

The warrant for Kirtdoll's house was amply specific to clear the Fourth Amendment's particularity hurdle.  Accordingly, the district court properly denied Kirtdoll's motion to suppress.

B.

Kirtdoll's only counterargument relies on *Knott v. Sullivan*.  418 F.3d 561 (6th Cir. 2005).  There, we held that a search warrant lacked particularity when "virtually every descriptor" of the vehicle to be searched was inaccurate.  *Id.* at 569.  Far from a slight error like "the mere transposition of digits," the make, model, vehicle identification number, and license plate number were all wrong.  *Id.* at 569–70.  Indeed, the warrant's only correct information was the car's general location in a sheriff's office's garage.  But even that information was flawed; it could have easily referred to another vehicle owned by a member of the defendant's family.  *Id.* Kirtdoll argues that the warrant here is just as flawed as the one in *Knott*.

Not so.  The numerous descriptors accurately identifying Kirtdoll's house—and only his house—stand in stark contrast to the circumstances in *Knott*.  There, the warrant was devoid of any accurate information beyond the target's general location in a garage—hardly a limiting descriptor.  What's more, the warrant in *Knott* could have been referring to either of two vehicles belonging to the family under investigation.  So not only did the warrant lack detail, but the information it *did* include created an unreasonable likelihood the wrong car would be searched. Here, by contrast—given the accurate, detailed appearance and location descriptors the warrant included—the inaccurate tax identification number and owner were unlikely to lead executing officers astray.  Thus, Kirtdoll finds no support in *Knott*.

\*       \*       \*

We affirm.