**20-892-cr**
*United States v. Braggs*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————

August Term 2020

(Argued: March 9, 2021 | Decided: July 13, 2021)

Docket No. 20-892-cr

UNITED STATES OF AMERICA,

*Appellant*,

v.

SHAMMAR BRAGGS,

*Defendant-Appellee.*†

————————

Before:
SACK, WESLEY, MENASHI, *Circuit Judges*.


After serving a term of imprisonment for a felony drug conviction, Shammar Braggs was released on parole subject to continuing supervision by the New York State Department of Corrections and Community Supervision ("DOCCS"). While on parole, Braggs was prohibited from possessing firearms, ammunition, or narcotics and consented in writing to searches by his parole officer. Upon receiving an anonymous tip that Braggs may have been in possession of guns, DOCCS sent a team of parole officers to search his house, turning up multiple firearms, a box of ammunition, and illegal narcotics. During the search, Braggs admitted to owning the guns. Prosecutors subsequently

---

† The Clerk of the Court is directed to amend the official caption as set forth above.

brought drug trafficking and firearms charges against Braggs in the Western District of New York. Braggs moved to suppress both the contraband uncovered during the search and the statements he made in connection with the search. The district court (Roemer, *Magistrate*; Skretny, *Judge*) granted the motion, concluding that the search violated Braggs's Fourth Amendment rights because it was executed without reasonable suspicion. However, under our established Special Needs Doctrine jurisprudence, the parole search was proper as it was reasonably related to the parole officers' duties. We therefore **VACATE** the suppression order.

————————————

TIFFANY H. LEE, Assistant United States Attorney, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Buffalo, NY, *for Appellant*.

FARES A. RUMI, The Phoenix Law Group, PLLC, Darien Center, NY, *for Defendant-Appellee*.

————————————

WESLEY, *Circuit Judge*:

The Government appeals from an order of suppression excluding all evidence gathered in connection with a parole search of Shammar Braggs's house. Parole officers executed the search after the New York State Department of Corrections and Community Supervision ("DOCCS") received an anonymous tip that Braggs may have guns in his house. Concluding that the parole officers lacked reasonable suspicion, the district court (Roemer, *Magistrate*; Skretny, *Judge*) suppressed the evidence obtained in connection with the search. In doing so, the

2

court relied on the search standard set forth in DOCCS Directive No. 9404 and on the United States Supreme Court's decision in *Samson v. California*, 547 U.S. 843 (2006). The Government concedes that there was insufficient evidence of wrongdoing by Braggs to establish reasonable suspicion for a search, but argues that both *Samson* and this Circuit's "Special Needs" jurisprudence permitted the search. Braggs contends that *Samson* is distinguishable in his favor and, in any event, that because New York State law requires reasonable suspicion for parole searches, the search in this case violated his Fourth Amendment rights.

Our precedents make clear that only federal law applies in a federal court's exclusionary rule analysis. Thus, the district court should not have employed the reasonable suspicion standard set forth in DOCCS Directive No. 9404. Nor did the district court need to evaluate the search under *Samson*, which concerned the search of a parolee by a general law enforcement officer and not a parole officer. Under the Special Needs Doctrine, a parole officer may search a parolee so long as the search is reasonably related to the performance of the officer's duties; that was the case here. We therefore vacate the suppression order and remand the case for further proceedings.

3

## BACKGROUND[1]

The district court made the following factual findings at the close of a two-day evidentiary hearing: Shammar Braggs was recently released on parole after serving time in prison for the criminal sale of a controlled substance. While on parole, Braggs was subject to DOCCS supervision and restricted by certain "standard and special conditions of release." J.A. 185. Those conditions included a curfew and a prohibition on possessing firearms, ammunition, or mind-altering substances. Braggs was also required to sign a form wherein he agreed to, *inter alia*, "permit [his] Parole Officer to visit [him] at [his] residence and/or place of employment and . . . permit the search and inspection of [his] person, residence and property." *Id.* at 145, 185–86.

Separately, DOCCS Directive No. 9404—an internal policy document—instructs that a parole officer may conduct a warrantless search of a parolee "when there is an articulable reason to conduct the search that demonstrates a risk to public safety or the parolee's re-entry into the community." *Id.* at 141. That document further defines "articulable reason" as being "based upon information which appears to be reliable and which results from . . . knowledge of specific facts

---

[1] Citations to J.A. refer to the Joint Appendix.

4

by a PO,[2] observations by said PO, communication from the parolee or from a family member of the parolee or from a member of the community or other informant, or from another government agency." *Id.* at 142.

Sometime prior to May 19, 2018, DOCCS received "an anonymous tip that Mr. Braggs may have guns in his house." *Id.* at 187. The tip was relayed to parole officer Brian Bailey through his supervisor; Bailey testified that he received no further information regarding the source or contents of the tip. Bailey subsequently conferred with and obtained approval from his supervisors to search Braggs's house to ensure that he was in compliance with his release conditions. When Bailey and a team of parole officers arrived at Braggs's house on the morning of May 19, they immediately handcuffed Braggs for "safety reasons" for the duration of the search. *Id.* at 187–88. The parole officers recovered two rifles, one handgun, a loaded magazine, a box of ammunition, drugs and drug paraphernalia, and $2,700 in cash.

The parole officers then called the Buffalo Police Department and multiple police officers were dispatched to the house. The police officers read Braggs his

---

[2] *I.e.*, parole officer.

*Miranda* warnings. Braggs cooperated during the ensuing questioning and, according to one of the police officers, stated that "all the guns are mine." *Id.* at 189.

On June 27, 2018, federal prosecutors filed charges against Braggs in the Western District of New York. Once indicted, Braggs moved to suppress the evidence seized, and the inculpatory statements made, in connection with the search. The district court granted Braggs's motion, determining that the search "was unreasonable under the circumstances and unconstitutional under the Fourth Amendment." *Id.* at 190.

The court found the testifying parole officers to be "wholly credible," *id.* at 189, but concluded that they lacked reasonable suspicion to search Braggs, in violation of what it believed to be the Fourth Amendment's requirements for parole searches in light of New York law. The court first observed that Braggs's search consent was less permissive than the search consent in *Samson v. California;* it reasoned that the suspicionless search permitted in *Samson* was therefore not controlling in Braggs's case. The court then looked to DOCCS Directive No. 9404, which allows a parole officer to conduct a warrantless search "only when there is an 'articulable reason' to conduct the search." *Id.* at 194–95. Because that language

6

appeared to be "equivalent to the [federal] 'reasonable suspicion' standard," the court deduced that officer Bailey and his team needed reasonable suspicion that Braggs had violated his parole conditions in order to lawfully execute the warrantless search. *Id.* It reinforced that conclusion by interpreting some of our previous cases as holding that reasonable suspicion was a necessary—rather than sufficient—condition for a warrantless search of a parolee by a parole officer. *Id.* at 192–94.

Finding that the vague, anonymous tip alone fell short of providing reasonable suspicion of Braggs's wrongdoing, the district court suppressed the fruits of the parole search. *Id.* at 195–98. The Government timely appealed the district court's order of suppression pursuant to 18 U.S.C. § 3731.

## DISCUSSION

This case involves two strands of our Fourth Amendment jurisprudence that appear to have been either muddled or overlooked as of late. The first deals with the consideration of state law in prescribing the metes and bounds of the exclusionary rule in federal prosecutions. The district court determined that the "appropriate standard for a parole search is reasonable suspicion" in part by reference to DOCCS Directive No. 9404's "articulable reason" requirement. J.A.

7

191, 194–95. As a general matter, however, "evidence admissible under federal law cannot be excluded [in a federal criminal proceeding] because it would be inadmissible under state law." *United States v. Pforzheimer*, 826 F.2d 200, 204 (2d Cir. 1987) (quoting *United States v. Alexander*, 761 F.2d 1294 (1st Cir. 1985)). This remains true even "when the evidence in question was solely the product of a state investigation." *Id.* at 202; *see Preston v. United States*, 376 U.S. 364, 366 (1964) ("The question whether evidence obtained by state officers and used against a defendant in a federal trial was obtained by unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers."). Of course, state law may at times "inform the contours of the government intrusion, both in terms of the legitimate state interests and the parolee's diminished expectation of privacy," *United States v. Hensley*, 941 F.3d 646, 650 (3d Cir. 2019); but that is not how the district court performed its analysis nor, as explained below, what was appropriate given the availability of a straightforward application of the Special Needs Doctrine. The district court was therefore wrong to adopt DOCCS Directive No. 9404 as supplying the exclusionary rule's dimensions in this federal prosecution.

8

Second, if only federal law defines the Fourth Amendment equation, how is a court to evaluate parole searches—that is, searches executed by parole officers for the purpose of monitoring the parolees under their charge?  It is beyond dispute that a parolee's home, "like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.'" *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987).  Nevertheless, the *Griffin* Court recognized that "[a] State's operation of a probation system . . . presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements."  *Id.* at 873–74.  In light of these special needs, "a search of a parolee is permissible so long as it is reasonably related to the parole officer's duties."[3] *United States v. Grimes*, 225 F.3d 254, 259 n.4 (2d Cir. 2000).  Among these duties are the supervision, rehabilitation, and societal reintegration of the parolee, as well as assuring that "the community is not harmed by the [parolee's] being at large."  *Griffin*, 483 U.S. at 875; *see People v. Huntley*, 43 N.Y.2d 175, 181–82 (1977).

---

[3] Because parolees "have fewer expectations of privacy than probationers," *Samson*, 547 U.S. at 850, the operation of a parole system is afforded at least as much discretion in this regard as the operation of a probation system, *see United States v. Grimes*, 225 F.3d 254, 257 (2d Cir. 2000).

Although we have continued to abide by the Special Needs standard for parole searches, the trial courts in this Circuit have at times misunderstood the Supreme Court's decision in *Samson v. California* as undermining our Special Needs jurisprudence.[4] *Samson* was decided in the wake of *United States v. Knights*, 534 U.S. 112, 121 (2005), which held that a Napa County detective did not violate the Fourth Amendment by conducting a warrantless search of a probationer's apartment based on reasonable suspicion. In *Samson*, the Supreme Court was called upon to "answer a variation of the question" the Court left open in *Knights*—"whether a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement

_____

[4] We acknowledge that several of our decisions have somewhat-cryptically raised the question whether a parole search would pass muster under *Samson*. *See, e.g.*, *United States v. Barner*, 666 F.3d 79, 86 (2d Cir. 2012) (declining to decide "whether the search could have been justified under *Samson*"); *United States v. Quinones*, 457 F. App'x 68, 69 n.1 (2d Cir. 2012) ("We need not decide whether or not *Samson* bears the weight the Government suggests because we conclude that the search in this case satisfies even the more solicitous" Special Needs Doctrine standard); *United States v. Viserto*, 391 F. App'x 932, 934 (2d Cir. 2010) (finding it "unnecessary for us to decide in this case whether *Samson* supplants our past precedent assessing the reasonableness of a parole search by reference to its relationship to parole duties"); *United States v. Watts*, 301 F. App'x 39, 42 n.2 (2d Cir. 2008) ("We save for another day and another case the question posed by the government—whether *Samson v. California* . . . supplants our prior cases in which we assessed the 'reasonableness' of a parole search."). Nevertheless, in each of those decisions, we expressly applied the Special Needs Doctrine test endorsed in *Grimes*. Had we believed that *Samson* in effect overruled *Grimes*, we assuredly would not have continued to apply the "reasonably related" analysis.

10

officer would not offend the Fourth Amendment." 547 U.S. at 847. Donald Samson was a California parolee who was released from prison on condition that he consent "to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." *Id.* at 846 (quoting Cal. Penal Code § 3067(a)). Recognizing Samson as a parolee, a police officer from the San Bruno Police Department stopped and searched Samson based *solely* on that status. *Id.* at 846–47. The Supreme Court held the suspicionless search lawful, finding "salient" California's expansive search consent in balancing Samson's expectation of privacy against the state's "substantial" interests. *Id.* at 852–53.

Both Braggs and the Government contend that *Samson* supports their favored outcome. But we need not apply *Samson* here because Braggs was searched by *parole officers*—a critical difference. Knights and Samson were searched by municipal police officers charged with vindicating the "State's general interest in law enforcement," *Ferguson v. City of Charleston*, 532 U.S. 67, 79 (2001), rather than by parole officers responsible for "further[ing] the special needs of the . . . parole system," *United States v. Barner*, 666 F.3d 79, 86 (2d Cir. 2012). Our colleagues in the Tenth Circuit articulated this distinction over a decade ago:

11

> We interpret the *Griffin* line of cases, based on "special need," as resting on the rehabilitative relationship between the parolee and the parole officer, and thus not extending to other law enforcement officers unless they are acting under the direction of the parole officer. We interpret the *Knights-Samson* line of cases as resting on the parolee's diminished expectation of privacy stemming from his own parole agreement and the state regulations applicable to his case.

*United States v. Freeman*, 479 F.3d 743, 748 (10th Cir. 2007).

Applying the Special Needs Doctrine, we conclude that the search of Braggs's house was reasonably related to the performance of the DOCCS officers' duties and therefore constitutionally permissible. *Grimes*, 225 F.3d at 259 n.4. Once Officer Bailey received notice of an anonymous tip suggesting that Braggs had guns in his possession[5]—a clear violation of his parole conditions—he and his team were constitutionally permitted to search the house to determine whether Braggs was complying with the relevant condition. *See Barner*, 666 F.3d at 85–86

---

[5] We note that Braggs also disputes the very fact of the tip's existence and marshals a fair amount of circumstantial evidence to that end. If his theory were correct, it could undermine our determination that the search was sufficiently related to a valid purpose and was instead carried out in order to, say, harass Braggs. *See Samson*, 547 U.S. at 856 (suggesting   that no search regime could constitutionally permit "arbitrary, capricious or harassing" searches of a parolee (internal quotation marks omitted)); *Knights*, 534 U.S. at 122 (noting that under the Special Needs Doctrine, "the actual motivations of individual officers" may form the basis for a Fourth Amendment challenge). However, because the magistrate judge who presided over the evidentiary hearing found the parole officers' testimony regarding the anonymous tip to be "wholly credible," J.A. 189, we decline to reinterpret the evidence as Braggs proposes.

(holding that once a parole officer received information that, "if true, would have constituted criminal parole violations . . . the ensuing search satisfied the reasonable relationship requirement . . . because it was performed in direct response to information that [the parole officer] obtained and that she had a duty to investigate further"); *United States v. Newton*, 369 F.3d 659, 666 (2d Cir. 2004) ("[O]nce the parole officers in this case received information that Newton had a gun at his residence and had threatened his mother and her husband, it was a reasonable exercise of their parole duty to search Ms. Wright's apartment."). Because a search undertaken by a parole officer of a parolee to detect parole violations is "reasonably related to the parole officer's duties," such a search is "permissible" under the Special Needs framework and accordingly "comport[s] with the Fourth Amendment." *Grimes*, 225 F.3d at 259 n.4; *see Huntley*, 43 N.Y.2d at 181 (explaining that a parole officer's duties include "detect[ing] and prevent[ing] parole violations for the protection of the public from the further commission of crimes"). The district court erred in holding that reasonable suspicion was required in this context.

13

## CONCLUSION

We **VACATE** the district court's order of suppression and **REMAND** the

case for further proceedings.