RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0162p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

                    *Plaintiff-Appellee*,

    *v.*

RONALD SHARP,

                  *Defendant-Appellant*.

No. 21-3828

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:20-cr-00029-1—Pamela A. Barker, District Judge.

Decided and Filed: July 22, 2022

Before: BATCHELDER, CLAY, and LARSEN, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** Catherine Adinaro Shusky, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Matthew B. Kall, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

    LARSEN, J., delivered the opinion of the court in which CLAY, J., joined. BATCHELDER, J. (pp. 11–15), delivered a separate opinion concurring in the judgment only.

─────────────────

## OPINION

─────────────────

    LARSEN, Circuit Judge. Ronald Sharp's parole officer found a gun while searching Sharp's home. After the district court denied his motion to suppress, a jury convicted Sharp of possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). Sharp appeals the denial of his suppression motion. We AFFIRM.

I.

After serving a decade in state prison for gross sexual imposition and kidnapping, Sharp was released on a five-year term of parole in 2015. Sharp's parole conditions required him to refrain from unsupervised contact with minors; obtain his parole officer's approval of any adult who might supervise his contact with minors; and submit to "warrantless search[es]" of his person and property "at any time." Under Ohio law, a parole officer may search a parolee without a warrant if he has "reasonable grounds" to suspect that the parolee has violated the law or a parole condition. Ohio Rev. Code § 2967.131(C).

On September 24, 2019, a woman complained to local police that, ten days earlier, Sharp had sexually assaulted her at his house while her two children slept in a nearby room. She also stated that Sharp had been assisting her and her children with transportation during the week prior to the assault. The investigating detective forwarded this information to Sharp's parole officer, Campbell Bailey. After reviewing the police report and witness statements, Bailey concluded that Sharp had violated his parole.

On October 4, nearly three weeks after the alleged assault, Bailey arrested Sharp at his worksite. Bailey and other officers transported Sharp back to his home, where they conducted a warrantless search for evidence of a parole violation, including signs that minors had been in Sharp's home without authorization. During the search Bailey found a loaded firearm.

A federal grand jury indicted Sharp for possessing a firearm as a felon. Sharp moved to suppress the gun, arguing that Bailey lacked reasonable suspicion for the search. The district court denied the motion, concluding that the search was justified both because it satisfied the special-needs exception to the warrant requirement and because the search was reasonable under the totality of the circumstances. A jury found Sharp guilty, and the district court sentenced him to 27 months' imprisonment. Sharp appeals the denial of his suppression motion.

II.

"In reviewing the denial of a motion to suppress, we review legal questions de novo and the district court's factual findings for clear error." *United States v. Cooper*, 24 F.4th 1086, 1090–91 (6th Cir. 2022). We take the evidence in a light most favorable to the government. *United States v. Abdalla*, 972 F.3d 838, 844 (6th Cir. 2020).

A.

"The touchstone of the Fourth Amendment is reasonableness . . . ." *United States v. Knights*, 534 U.S. 112, 118 (2001). A warrantless search of an individual under criminal supervision, including a parolee, is reasonable under the Fourth Amendment if it satisfies either of "two distinct doctrinal frameworks." *United States v. Herndon*, 501 F.3d 683, 687–88 (6th Cir. 2007).

First, under the "special needs" test set out in *Griffin v. Wisconsin*, a parolee search is reasonable if it is conducted in accordance with a constitutional state law authorizing warrantless searches. 483 U.S. 868, 880 (1987); *see United States v. Doxey*, 833 F.3d 692, 703–04 (6th Cir. 2016). We have already held that Ohio's parolee search statute, Ohio Rev. Code § 2967.131(C), passes constitutional muster. *United States v. Loney*, 331 F.3d 516, 521 (6th Cir. 2003). So, the only question under the "special needs" framework is whether Bailey's search complied with § 2967.131(C). *See United States v. Payne*, 181 F.3d 781, 787–88 (6th Cir. 1999). Although the parties dispute the precise requirements of that statute, they agree that the search passes muster if Bailey reasonably suspected that he would find evidence of the presence of minors at Sharp's house.

Alternatively, a parolee or probationer search may be deemed reasonable by examining the "totality of the circumstances." *Samson v. California*, 547 U.S. 843, 848 (2006); *Knights*, 534 U.S. at 118. Relevant factors include: (1) a person's position on the "continuum" of criminal punishments, *Samson*, 547 U.S. at 850–52 (quoting *Knights*, 534 U.S. at 119); (2) the terms of the search condition communicated to the person, *id.* at 852; and (3) the State's interest in supervision, *id.* at 853–54. The parties recognize that Sharp's status as a parolee "severely diminished" his expectations of privacy, *id.* at 852, and that Ohio has a significant interest in

supervising parolees like Sharp.  The parties also agree that Sharp's search condition authorized searches based on no more than reasonable suspicion.[1]  And, as under the special-needs framework, the parties agree that Bailey's search was reasonable under the totality of the circumstances if it was supported by reasonable suspicion.

B.

The search here was supported by reasonable suspicion and therefore passes the tests set forth both in *Griffin* and *Knights–Samson*.  Reasonable suspicion exists if, based on the totality of the circumstances, the officer's suspicion has "a particularized and objective basis."  *United States v. Cortez*, 449 U.S. 411, 417 (1981).  This standard is "considerably" lower than "a preponderance of the evidence," and is "obviously less demanding" than probable cause.  *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

Sharp does not contest the reliability of the sexual-assault victim's report, including her allegation that children had recently been in Sharp's home.  Rather, his protests are two-fold: Sharp first contends that the victim's statement did not indicate that evidence of the presence of minors would be found at Sharp's home.  But Bailey testified that he would typically find such evidence—clothing, toys, and the like—in the homes of parolees suspected of similar violations.  Bailey permissibly relied on that experience in suspecting that he would find evidence in Sharp's home.  *Cortez*, 449 U.S. at 418.

Sharp next argues that Bailey's suspicion was stale when he searched the house nearly three weeks after the alleged contact.  We disagree.  Four factors inform our analysis.  *United States v. Pope*, 852 F. App'x 945, 951–52 (6th Cir. 2021).  First, we consider whether the suspected offense (or parole violation) was discrete or continuous.  *Id.* at 951.  This factor weighs in Sharp's favor because his alleged contact with minors, at least on the facts known to Bailey, was an isolated occurrence.  But the remaining factors weigh strongly against him.

---

[1]Bailey testified that he reviewed with Sharp the standard and special conditions of his release.  The conditions form states that Sharp agreed to "the warrantless search" of his person and property by certain authorized personnel "at any time."  It makes no mention of the statutory "reasonable grounds" standard for parolee searches, Ohio Rev. Code § 2967.131(C), but Bailey testified that he understood that he needed reasonable suspicion to search a parolee's house.

Our second consideration is whether the suspect was "nomadic or entrenched." *Id.* at 952 (quoting *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009)). Sharp, who lived in the same house between the sexual-assault complaint and Bailey's search, was clearly the latter. Indeed, he could not have moved without informing Bailey. Third, the evidence at issue—signs of children's presence, like clothes, toys, or a toothbrush—was not "easily consumable or perishable." *Id.*; *see also Payne*, 181 F.3d at 790 (deeming tip stale in part because "[d]rugs are not the types of objects that are likely to be kept"). And finally, because Bailey searched Sharp's home, which our cases consider a "secure operational base" for criminal activity, the fourth factor cuts against him too. *Pope*, 852 F. App'x at 952 (quoting *United States v. Elbe*, 774 F.3d 885, 890 (6th Cir. 2014)). In light of these factors and a concededly reliable report of Sharp's recent unapproved contact with minors, we agree with the district court that Bailey reasonably suspected that he would find evidence of a parole violation at Sharp's home. Accordingly, the search was constitutional under the Fourth Amendment and the district court was right to deny Sharp's motion to suppress.

## C.

On appeal, the government offers an alternative, and brand-new, argument supporting the search: The officers didn't need reasonable suspicion at all. The government points out that *Samson* authorizes suspicionless searches of parolees "if the release conditions permit[] it." Appellee Br. at 19. And that's the case here, the government says, because Sharp's search conditions permitted "warrantless search[es]" of his residence "at any time." *Id.* at 22.

There is no reason to entertain this forfeited argument here. Even if Sharp's search condition required reasonable suspicion, as the parties assumed below, that standard was easily satisfied. We note, however, that the government's *Samson* analogy is not obvious. Unlike Sharp's, the search condition in *Samson* explicitly authorized searches "at any time . . . *with or without cause*," 547 U.S. at 846 (emphasis added). But we need not resolve the meaning of Sharp's search condition today.

The concurring opinion doesn't resolve it either. As the concurrence sees it, *Samson* is unconcerned with what Sharp's search conditions required; instead, *Samson* created a bright-line

rule that parolees, like the cells of incarcerated prisoners, may always be searched without suspicion. Concurrence Op. at 11; *see Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984). That reading of *Samson* extends well beyond what the government, or any court, has ever suggested. That reading is also unnecessary; the concurrence does not dispute our conclusion that reasonable suspicion supported this search. And, most importantly, that reading is mistaken.

The question in *Samson* was whether a suspicionless search of a parolee, conducted pursuant to a California statute and a parole condition authorizing such searches, violated the Fourth Amendment. 547 U.S. at 846. Deploying the same totality-of-the-circumstances test used in *Knights*, the Court considered: the fact that parole is more akin to imprisonment than probation, *id.* at 850; the "extent and reach" of California's general parole conditions, *id.* at 852; "the plain terms of [Samson's] parole search condition," which expressly authorized suspicionless searches, *id.*; the fact that Samson's parole condition was "clearly expressed" to him, *id.*; California's substantial interest in supervising a vast population of parolees with a high recidivism rate, *id.* at 853–84; and California's requirement that parolee searches not be "arbitrary, capricious, or harassing," *id.* at 856. Balancing these factors, the Court concluded that the suspicionless search of Samson was reasonable under the circumstances. *Id.* at 852.

*Samson* quite plainly directs us to apply a "totality of the circumstances" test that considers the terms of the search condition, along with the defendant's status and the government's interests. Yet, the concurrence would reduce *Samson*'s multi-factor balancing test to a single element—whether the defendant is a parolee. Concurrence Op. at 11. That not only flies in the face of the Court's mode of analysis, but also ignores its repeated, express reliance on the parolee's search condition and background state law (all emphases added):

- "We granted certiorari to decide whether a suspicionless search, *conducted under the authority of this statute*, violates the Constitution." *Samson*, 547 U.S. at 846.

- "We granted certiorari to answer a variation of the question this Court left open in [*Knights*]—*whether a condition of release* can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment." *Id.* at 847.

- "Because the search at issue in *Knights* was predicated on both the probation search condition and reasonable suspicion, we did not reach the question whether

the search would have been reasonable under the Fourth Amendment had it been *solely predicated upon the condition of probation*." *Id.* at 850.

- "[A]s we found 'salient' in *Knights . . . the parole search condition under California law . . .* was 'clearly expressed' to [Samson]. He signed an order submitting to the condition and thus was 'unambiguously' aware of it." *Id.* at 852 (quoting *Knights*, 534 U.S. at 119) (citation omitted).

- "Examining the totality of the circumstances pertaining to petitioner's status as a parolee, an established variation on imprisonment, *including the plain terms of the parole search condition*, we conclude that petitioner did not have an expectation of privacy that society would recognize as legitimate." *Id.* at 852 (citation and quotation marks omitted).

Of course, the last line of the *Samson* opinion "conclude[d] that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Id.* at 857. But it preceded that statement with the analysis above, which considered both Samson's "status as a parolee" and "the plain terms of the parole search condition" as part of its "totality of the circumstances" analysis. *Id.* at 852. In concluding that the parole status alone is conclusive, the concurrence relegates the Court's many statements about the search condition to the status of careless dictum. We cannot accept such a dubious reading.

No other court has read *Samson* as the concurrence does. Each time we have upheld a suspicionless search under *Samson*, the defendant was, like Samson himself, subject to a release condition that authorized such searches, and we considered that fact in our analysis. *See United States v. Massengill*, 769 F. App'x 342, 343, 346 (6th Cir. 2019) (condition permitted search "at any time without reasonable suspicion"); *United States v. Brown*, 832 F. App'x 397, 400–01 (6th Cir. 2020) (same); *United States v. Tessier*, 814 F.3d 432, 433 (6th Cir. 2016) (adopting district court opinion that construed search condition to permit searches without reasonable suspicion); *United States v. Smith*, 526 F.3d 306, 309–11 (6th Cir. 2008) (defendant on community release was told that "his home was his prison" and he could be searched "as if he were still in the facility"). And our sister circuits have specifically rejected the notion that *Samson* authorizes suspicionless parolee searches regardless of the search condition or background state law. *United States v. Henley*, 941 F.3d 646, 650–51 (3d Cir. 2019) (Hardiman, J.); *United States v. Freeman*, 479 F.3d 743, 747–48 (10th Cir. 2007) (McConnell, J.).

The concurrence seems to argue that, despite its explicit language, *Samson* cannot really have meant for us to consider the search condition because that would mean that Fourth Amendment rights could vary state-by-state (or even person-by-person). Concurrence Op. at 12–14. We agree that is an unusual state of affairs. The Fourth Amendment's protections generally apply the same nationwide. *See Virginia v. Moore*, 553 U.S. 164, 176 (2008). Still, the Supreme Court's jurisprudence has not always comported with that principle. For example, officers may conduct suspicionless searches of impounded vehicles under the inventory-search exception to the warrant requirement, but only if the relevant jurisdiction has a policy regulating such searches. *Florida v. Wells*, 495 U.S. 1, 5 (1990); *United States v. Alexander*, 954 F.3d 910, 915–16 (6th Cir. 2020). In that way, a state or locality, by having no policy, can "grant [local drivers] a *Fourth Amendment right* (to require . . . individualized suspicion)" that drivers in other jurisdictions "do not have." Concurrence Op. at 12. Similarly, the Court has repeatedly concluded that state-created policies may diminish an individual's expectation of privacy; it follows that people subject to those policies are susceptible to searches that might be constitutionally unacceptable in other regimes. *See, e.g.*, *Bd. of Educ. v. Earls*, 536 U.S. 822, 832 (2002) (The "regulation of extracurricular activities" by state and local authorities "further diminishes the expectation of privacy among schoolchildren" who participate, making suspicionless drug-testing more reasonable.); *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987) (plurality opinion) ("Public employees' expectations of privacy in their offices, desks, and file cabinets . . . may be reduced by virtue of actual office practices and procedures, or by legitimate regulation."); *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 627 (1989) ("[T]he expectations of privacy of covered employees are diminished by reason of their participation in an industry that is regulated pervasively to ensure safety . . . ."). Thus, officers in a State with a regulatory scheme for inspections of a "closely regulated" industry may be able to search commercial premises without a warrant, while officers in a state without such a scheme would not. *New York v. Burger*, 482 U.S. 691, 699–704 (1987).

We acknowledge that there is something counterintuitive about Fourth Amendment doctrine that looks to "the rules for search and seizure set by government actors as the index of reasonableness." *Moore*, 553 U.S. at 169. The concurrence notes that such a doctrine allows one state to confer on its citizens broader federal constitutional protection than is enjoyed by

citizens of other states. Others object that such a doctrine allows the government to reduce its citizens' rights simply by notifying them that they should not expect privacy. *See* Anthony G. Amsterdam, *Perspectives on the Fourth Amendment,* 58 Mn. L. Rev. 349, 384 (1974) (famously quipping that Fourth Amendment theories based on "expectations of privacy" could allow the government to surveil the whole citizenry "merely by announcing" its plan "half-hourly on television"). But regardless of whether these critiques are sound, the Court's decisions reveal that the Fourth Amendment uniformity principle has not always been applied uniformly. Happily, the Supreme Court has told us what to do in a case like this. We are to leave to that Court the task of ironing out any doctrinal tensions we might perceive and "follow the case which directly controls." *Agostini v. Felton,* 521 U.S. 203, 237 (1997). Here, that case is *Samson*, which plainly instructs us to factor a parolee's search conditions into the reasonableness balance.

### D.

We'd be remiss not to respond briefly to the concurrence's claim that the government may no longer justify a parolee search under *Griffin*. Concurrence Op. at 11. Apart from observing that Sharp is a parolee and not a probationer, the concurrence offers no reason for concluding that *Griffin* cannot apply here. There is no such reason. "*Griffin* remains a legitimate basis for justifying such a search." *Herndon,* 501 F.3d at 688. Although initially applied to a probationer, *Griffin*'s "special needs" framework applies *a fortiori* to parolees, as our cases have recognized. *See Doxey*, 833 F.3d at 702–04; *United States v. Payne*, 588 F. App'x 427, 431 (6th Cir. 2014). Nothing in *Knights* or *Samson* suggests that the Court closed the door on the government's ability to justify searches using the *Griffin* approach; quite the contrary, both were clear that the totality-of-the-circumstances approach is an alternative to, not a replacement for, the special-needs test. *See Samson*, 547 U.S. at 852 n.3; *Knights*, 534 U.S. at 117–18, 122. If either is satisfied, the search is constitutional.[2] *Payne*, 588 F. App'x at 431. Other courts agree.

---

[2]We recognize that the *Knights–Samson* test may often be easier to satisfy than *Griffin*. Some courts, however, have deployed *Griffin* to uphold warrantless, suspicionless probationer searches in unique circumstances. *See, e.g.*, *United States v. LeBlanc*, 490 F.3d 361, 363–64 (5th Cir. 2007) (holding that seizure of contraband in plain view during routine home visit by probation officer satisfied *Griffin*'s special-needs test despite officer's lack of reasonable suspicion). We take no position on such decisions but simply note that *Griffin*'s test still has a role to play in Fourth Amendment analysis.

*See, e.g.*, *United States v. Braggs*, 5 F.4th 183, 187–88 (2d Cir. 2021) (reading *Griffin* and *Knights–Samson* as alternatives); *United States v. Price*, 28 F.4th 739, 751 (7th Cir. 2022) (same); *Freeman*, 479 F.3d at 746–48 (same).

Contrary to the concurrence's suggestion, Concurrence Op. at 12, our decision in *Smith* does not take *Griffin* off the table as a way to excuse warrantless parolee searches. *Smith* employed the totality-of-the-circumstances test in concluding that a suspicionless search of a "prisoner" on home confinement satisfied the Fourth Amendment. 526 U.S. at 308. In the process, we rejected Smith's argument that either *Griffin* or *Knights* set reasonable suspicion as the constitutional floor for all warrantless searches. *Samson*, we noted, rejected that proposition "(at least in the context of a parolee search)" by answering in the affirmative "a question it had reserved in *Knights*: 'whether the search would have been reasonable under the Fourth Amendment had it been solely predicated' on the inmate's condition of release, not on reasonable suspicion." *Id.* at 310. Considering the totality of Smith's circumstances, including a search condition permitting officers to "search his living quarters as freely as they could search his prison cell," we concluded that Smith's privacy expectations were diminished below even those of the parolee in *Samson*, so the result followed *a fortiori* from that case. *Id.* at 308, 310. While *Smith* upheld the search under *Samson*, nothing in the opinion foreclosed applying *Griffin*'s special-needs doctrine to parolee searches. A warrantless parolee search that survives under either *Knights–Samson* or *Griffin* "need not pass muster under the other." *Payne*, 588 F. App'x at 431 & n.3.

\* \* \*

The search of Sharp's home was supported by reasonable suspicion. We AFFIRM.

---

**CONCURRING IN THE JUDGMENT ONLY**

---

ALICE M. BATCHELDER, Circuit Judge, concurring in the judgment. Sharp is a parolee, not a probationer. Because Sharp is a parolee, the controlling law is *Samson v. California*, 547 U.S. 843 (2006), not *Griffin v. Wisconsin*, 483 U.S. 868 (1987), or *United States v. Knights*, 534 U.S. 112 (2001). Consequently, I cannot join the lead opinion's analysis.

**I.**

The Fourth Amendment does not require a parole officer to have reasonable suspicion—or *any* individualized suspicion—to justify a search of a parolee's residence. *United States v. Massengill*, 769 F. App'x 342, 346 (6th Cir. 2019) (relying on *Samson*, 547 U.S. at 857 ("[T]he Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee.")); *United States v. Smith*, 526 F.3d 306, 310 (6th Cir. 2008); *see also United States v. Herndon*, 501 F.3d 683, 688 n.2 (6th Cir. 2007).

"[A] particular Fourth Amendment reasonableness analysis applies to parolee searches," one that does not require "an examination of individualized suspicion." *Massengill*, 769 F. App'x at 346 (quotation marks omitted) (relying on *Samson*, 547 U.S. at 855 n.4). It is instead "a totality of the circumstances test that requires assessing, on the one hand, the degree to which the search intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Id.* (editorial marks, quotation marks, and citations omitted) (relying on *Samson*, 547 U.S. at 848).

Sharp is a parolee with a diminished expectation of privacy. Ohio has a legitimate and significant interest in supervising Sharp's parole status. Therefore, the parolee search of his residence was reasonable, regardless of any (or lack of any) individualized suspicion.

**II.**

Sharp contends that his probation officer did not satisfy the reasonable-suspicion standard of *Griffin* or *Knights*, so the search violated the Fourth Amendment. That is the law for

probationers, not parolees. *See Smith*, 526 F.3d at 310 (rejecting the "reasonable suspicion" standard of *Griffin* and *Knights* for Fourth Amendment analysis of parolee searches).

In substance, Sharp's claim is that a search of a parolee violates the Fourth Amendment unless the parole officer can show some articulable, reasonable, individualized suspicion that justifies the search. At a minimum, the Fourth Amendment right would be a parolee's right to privacy—free from search—unless the parole officer has some individualized suspicion to justify the search. But parolees have no such right *under the Fourth Amendment*.

In *Samson*, the Supreme Court considered whether a California law that permits suspicionless searches of parolees violates the Fourth Amendment. Otherwise stated: does the Fourth Amendment require that a police officer must have individualized suspicion to search a parolee? Under either construction of the question, the clear answer was no. The California law permitting suspicionless searches of its parolees was constitutional because parolees do not have a *Fourth Amendment right* to be free from suspicionless searches. *Sampson*, 547 U.S. at 857. As a convenient shorthand, I will refer to this as "a parolee's right to require individualized suspicion," meaning, of course, a parolee's putative right to privacy—free from search—unless the parole or police officer can show some individualized suspicion to justify the search.

In *United States v. Freeman*, 479 F.3d 743, 747–48 (10th Cir. 2007), the Tenth Circuit read *Sampson* to mean that: "Parolee searches are therefore an example of the rare instance in which the contours of a federal constitutional right are determined, in part, by the content of state law." I cannot agree with that proposition. I cannot agree that state laws—i.e., state legislatures, state courts, or local agencies—determine Fourth Amendment rights.

If that were correct, then the Ohio legislature, via O.R.C. § 2967.131(c), has granted Ohio parolees such as Sharp a *Fourth Amendment right* (to require reasonable, individualized suspicion) that California parolees do not have. Suppose the Ohio legislature were to repeal this statute and enact a replacement that replicates the California statute word for word. The new statute would deny Ohio parolees their existing (apparently state-created) Fourth Amendment right to require individualized, reasonable suspicion—*and* violate the Constitution because the Constitution does not permit states to infringe on citizen's established constitutional rights. This

identical statute would be constitutional in California, based on *Sampson*, but unconstitutional in Ohio.

The same could be said of California. Suppose the California legislature were to repeal its statute and enact a replacement that replicates the Ohio statute word for word. Under the Tenth Circuit's proposition, the California legislature would be creating for its state's parolees a new Fourth Amendment right to require reasonable suspicion, effectively overruling the Supreme Court's Fourth Amendment holding in *Sampson*. I cannot agree that state legislators, state courts, or local administrators can create, diminish, or eliminate Fourth Amendment rights.

In *United States v. Henley*, 941 F.3d 646, 650 (3d Cir. 2019), the government argued that "the Fourth Amendment requires no suspicion to justify a warrantless parole search, even if Pennsylvania law would." *Id.* at 650. The Third Circuit disagreed and, like the Tenth Circuit in *Freeman*, read *Sampson* as holding that state law (or state regulation or local policy) determines a parolee's Fourth Amendment rights: i.e., because California law allows a parolee search without individualized suspicion, California parolees had no Fourth Amendment right to require individualized suspicion; but, because Pennsylvania law requires reasonable suspicion for a search, Pennsylvania parolees do have a Fourth Amendment right to require reasonable suspicion.

From that mistaken premise, *Henley* concludes that the Fourth Amendment requires reasonable suspicion for a parolee search unless "a statute []or a condition of parole provides that [the parolee] was subject to a search without suspicion." *Id.* at 651. Along the way, *Henley* appears to have relied on a misunderstanding of a paragraph in *Samson*, which says:

> Petitioner [Sampson] observes that the majority of States and the Federal Government have been able to further similar interests in reducing recidivism and promoting reintegration, despite having systems that permit parolee searches based upon some level of suspicion. Thus, petitioner contends, California's system is constitutionally defective by comparison. Petitioner's reliance on the practices of jurisdictions other than California, however, is misplaced. That some States and the Federal Government require a level of individualized suspicion is of little relevance to our determination whether California's supervisory system is drawn to meet its needs and is reasonable, taking into account a parolee's substantially diminished expectation of privacy.

*Sampson*, 547 U.S. at 855 (footnote omitted). It appears that the Third Circuit in *Henley* read this paragraph to mean that *Sampson* allowed California to eliminate its parolees' Fourth Amendment right to individualized suspicion, but because California's action has no bearing on Fourth Amendment rights in other jurisdictions, *Sampson* does *not* deprive other parolees (in general or elsewhere) of their existing Fourth Amendment right to require reasonable suspicion.

That is backwards. That paragraph in *Sampson* means that, regardless of any additional protections (above and beyond the Fourth Amendment's requirements) that other jurisdictions might afford their parolees, California's omission of such additional protections does not violate the Fourth Amendment. That is because the Fourth Amendment *on its own* does not require a showing of individualized suspicion for parolee searches. *See also Sampson*, 547 U.S. at 855 n.4 ("The touchstone of the Fourth Amendment is reasonableness, not individualized suspicion. Thus, . . . we have also recognized that the Fourth Amendment imposes no irreducible requirement of such [individualized] suspicion." (quotation marks and citations omitted)).

Therefore, to the extent that Sharp claims that the *Fourth Amendment requires* a parole officer to show some articulable, reasonable, individualized suspicion to justify the search, that claim fails because parolees have no such "irreducible" right under the Fourth Amendment.

**III.**

To be fair, Sharp does not really argue that the search was unreasonable under the Fourth Amendment; he argues that the search did not comply with Ohio law or his parole conditions:

> To support a warrantless search under Ohio Revised Code § 2967.131(C), there must be 'reasonable grounds' to believe evidence of the violation will be found in [the parolee's] home. *See Ohio v. Karns*, 2011-Ohio-6109, ¶ 33, 196 Ohio App. 3d 731, 737–38; *Ohio v. Howell*, No. 97CA824, 1998 WL 807800, at *5 (Ohio Ct. App. Nov. 17, 1998). The facts in this case do not satisfy the 'reasonable grounds' requirement of O.R.C. § 2967.131(C).

Sharp's Appellant Br. at 18 (paragraph break omitted).

But "in federal court, [the exclusionary rule] only requires the court to exclude evidence seized in violation of the Federal Constitution." *United States v. Wright*, 16 F.3d 1429, 1434 (6th Cir. 1994). "[S]tate law has no independent significance in determining whether the Fourth

Amendment has been violated." *United States v. Henry*, 429 F.3d 603, 607 n.3 (6th Cir. 2005). "While the states are free to impose rules for searches and seizures that are more restrictive than the Fourth Amendment, those rules will not be enforced in a federal criminal proceeding." *United States v. Beals*, 698 F.3d 248, 263 (6th Cir. 2012).

Ohio law is irrelevant to Sharp's motion in federal court. I believe that it is likewise irrelevant to our determination of Sharp's Fourth Amendment rights under *Sampson*.

## IV.

For these reasons, I concur in the lead opinion's judgment but not its analysis.