NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0022n.06

Case No. 21-6134

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff-Appellee, | ) | Jan 11, 2023 |
|  | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| MICHAEL ROGERS, | ) |  |
| Defendant-Appellant. | ) | OPINION |
|  | ) |  |

Before: BUSH, LARSEN, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Michael Rogers appeals the district court's decision denying his motion to suppress evidence and challenges the reasonableness of his sentence. We affirm.

I.

In early August 2018, Special Agent Elizabeth White ("Agent White") of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") received a tip that Rogers was growing marijuana at 2267 Curve Nankipoo in Lauderdale County, Tennessee ("the Nankipoo residence") and was in possession of a firearm while on probation. To verify the tip, Agent White contacted Rogers's probation officer, who confirmed he was on probation. As part of his probation order, Rogers agreed to a search provision that stated: "I agree to a search without a warrant of my person, vehicle, property or place of residence by any probation, parole officer or law enforcement officer at any time." [R. 130, PageID 688].

On August 9, 2018, Agent White, another ATF agent, and three other law enforcement officers visited the Nankipoo residence. Lauderdale County Sheriff's Office investigator James Jones ("Jones") was one of the officers present. Upon their arrival at the Nankipoo residence, a dog outside started barking and Rogers came outside.

Jones told Rogers that the officers were there in response to a tip accusing Rogers of growing marijuana on the property and possessing a firearm. In 2011, Jones had arrested Rogers for growing marijuana. Rogers told Jones that he was "doing the same thing as last time." [R. 121, PageID 479]. Rogers then explained to Jones where some of the marijuana plants were growing around the property.

Once that conversation concluded, the officers began a warrantless search of the Nankipoo residence. Meanwhile, Jones introduced Rogers to Agent White. Agent White read Rogers his *Miranda* rights before questioning him. Rogers signed a form acknowleding that he had been read his rights and was willing to answer questions without a lawyer present. Rogers also signed a form consenting to the search of the Nankipoo residence. The officers ultimately recovered a .22-caliber rifle, 0.30-06 ammunition, and multiple marijuana plants. Rogers admitted to borrowing the rifle from his brother and growing marijuana at the Nankipoo residence during the previous several months.

The officers then transported Rogers to the Lauderdale County Justice Center. There, Agent White continued her interrogation of Rogers. Approximately three minutes into the questioning, Agent White reminded Rogers of his *Miranda* rights. Rogers chose to continue the interrogation. Rogers said that although he lived primarily with his mother, he had lived at the Nankipoo residence part-time until May 2018. Rogers still had some of his furniture and clothes

at the Nankipoo residence. Also, Rogers's nephew lived at the Nankipoo residence as of August 2018.

A federal grand jury indicted Rogers for one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) ("Count 1"), one count of felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1) ("Count 2"), one count of possession with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) ("Count 3"), and one count of possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A) ("Count 4"). Rogers moved to suppress the evidence from the search of the Nankipoo residence and his statements to Jones and Agent White at the Nankipoo residence. The district court denied the motion to suppress. Counts 3 and 4 of the superseding indictment were ultimately dismissed. After a jury trial, Rogers was found guilty on Counts 1 and 2.

At sentencing, Rogers contested the presentence report's calculation of his base offense level as 24 pursuant to U.S.S.G. § 2K2.1(a)(2), arguing that he did not have two prior convictions for either a crime of violence or a controlled substance offense. Specifically, Rogers argued that his prior Tennessee felony conviction for manufacturing marijuana was not a "controlled substance offense" as that term is defined in the Sentencing Guidelines. The district court overruled Rogers's objection and sentenced him to 70 months of imprisonment.

## II.

On appeal, Rogers argues that the district court erred in denying his motion to suppress the search of the Nankipoo residence because: (1) he did not reside at the residence; (2) the officers did not have reasonable suspicion to search the residence; and (3) to the extent the officers had reasonable suspicion, the information they relied on was stale by the time they conducted the search. Rogers further argues that the district court erred in finding that his Tennessee

manufacturing marijuana conviction was a controlled substance offense. Finding that the district court did not err, we affirm the denial of Rogers's motion to suppress and affirm his sentence.

### A. Motion to suppress.

"In reviewing the denial of a motion to suppress, we review legal questions de novo and the district court's factual findings for clear error." *United States v. Cooper*, 24 F.4th 1086, 1090–91 (6th Cir. 2022) (citing *United States v. Abdalla*, 972 F.3d 838, 844 (6th Cir. 2020)). "A factual finding will only be clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Adams*, 583 F.3d 457, 463 (6th Cir. 2009) (quoting *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999)). Because Rogers's motion to suppress was denied, "[w]e take the evidence in a light most favorable to the government." *United States v. Sharp*, 40 F.4th 749, 752 (6th Cir. 2022) (citing *Abdalla*, 972 F.3d at 844).

The Fourth Amendment forbids the government from conducting unreasonable searches and seizures. U.S. Const. amend. IV; *see also Riley v. California*, 573 U.S. 373, 381 (2014). The heart of the inquiry is whether a search was reasonable. *United States v. Knights*, 534 U.S. 112, 118–19 (2001). Specifically, the degree of the intrusion upon an individual's privacy is weighed against the degree to which the intrusion is needed for legitimate governmental interests. *Id*. Searches "inside a home without a warrant are presumptively unreasonable," but "this presumption may be overcome in some circumstances because 'the ultimate touchstone of the Fourth Amendment is reasonableness.'" *Kentucky v. King*, 563 U.S. 452, 459 (2011) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)).

A warrantless search of a probationer's residence may be reasonable based on the totality of the circumstances. *Sharp*, 40 F.4th at 753 (citing *Samson v. California*, 547 U.S. 843, 848

(2006); *Knights*, 534 U.S. at 118). "Relevant factors include: (1) a person's position in the continuum of criminal punishments; (2) the terms of the search condition communicated to the person; and (3) the State's interest in supervision." *Id.* (internal citations and quotation marks omitted).

The probationer's exception applies because Rogers was subject to a warrantless search provision and the officers had reasonable suspicion to search the Nankipoo residence. Applying the relevant factors here: (1) Rogers was on probation at the time of the warrantless search; (2) he was subject to a search condition plainly stated in his probation order that allowed warrantless searches; and (3) the State of Tennessee has a strong interest in supervising probationers to ensure they comply with the terms of their probation and to prevent recidivism. *See Knights*, 534 U.S. at 120–21 ("The State has a dual concern with a probationer. On the one hand is the hope that he will successfully complete probation . . . . On the other is the concern, quite justified, that he will be more likely to engage in criminal conduct than an ordinary member of the community."). As a probationer subject to such a search condition, Rogers's expectation of privacy was "significantly diminished." *See id*. at 120. "[T]he balance of these considerations requires no more than reasonable suspicion to conduct a search of this probationer's house." *Id.* at 121.

Based on the totality of the circumstances, the officers had reasonable suspicion to search the Nankipoo residence. "Reasonable suspicion exists if, based on the totality of the circumstances, the officer's suspicion has 'a particularized and objective basis.'" *Sharp*, 40 F.4th at 743 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). Here, Agent White received an anonymous tip that identified Rogers, alleged specific acts of criminal wrongdoing at the Nankipoo residence, and correctly identified Rogers as someone on probation.

Generally, an anonymous tip alone cannot establish reasonable suspicion. *Florida v. J.L.*, 529 U.S. 266, 270 (2000); *Feathers v. Aey*, 319 F.3d 843, 849 (6th Cir. 2003). However, if an anonymous tip is supported by indicia of reliability or corroborated with police observation, it can provide sufficient grounds for reasonable suspicion. *See Feathers*, 319 F.3d at 849 (holding that an anonymous tip did not contain indicia of reliability when the police did not observe what the tipster reported, and the tip did not predict future movements or indicate inside knowledge of the criminal activity). Allegations of specific criminal activity in progress or a specific person engaging in criminal acts are indicia of reliability. *See United States v. Johnson*, 620 F.3d 685, 690 (6th Cir. 2010). The call in this case identified Rogers and contained specific assertions of illegality, including that Rogers was growing marijuana and that he was in possession of a firearm while on probation. Further, the tip accurately referenced Rogers's probation status and his presence at the Nankipoo residence, which supports that the tipster had credible information about Rogers and his activities. *See J.L.*, 529 U.S. at 271. Additionally, Agent White was able to verify that Rogers was on probation. Rogers was also present at the Nankipoo residence when the officers arrived, and Rogers advised Jones he was "doing the same thing as last time." These officer observations provide further corroboration of the tip. Under the totality of the circumstances, the facts of this case establish that the officers had reasonable suspicion to search the Nankipoo residence.

Rogers argues the probationer's exception cannot apply because he was not living at the Nankipoo residence at the time of the search, and the address for his mother's house was the address listed on his probation order. The residence searched pursuant to a warrantless-search provision in a probation order need not be the address listed on the probation order if officers reasonably conclude the probationer resides at a different residence. *See, e.g.*, *United States v.*

*Henry*, 429 F.3d 603, 611 (6th Cir. 2005). And considering the totality of the circumstances, officers reasonably concluded Rogers lived at the Nankipoo residence rather than his mother's home. The officers received a tip alleging that Rogers lived at the Nankipoo residence and conducted illegal activities there. The tip was corroborated when Officer White verified Rogers was on probation, and when the officers arrived, Rogers was at the Nankipoo residence. Rogers's dog and the dog's kennel were there, which further supported that Rogers lived at the Nankipoo residence. Additionally, some of Rogers's furniture and clothing were at the residence. Nothing in the record suggests that Rogers informed the officers before they began the search that he did not reside at the house. And in fact, Rogers gave officers consent to search the residence. Altogether, the officers had a reasonable basis to conclude that Rogers was living at the Nankipoo residence.

Next, Rogers argues for the first time on appeal that Agent White's information was stale and could not support a finding of reasonable suspicion to justify the search of the Nankipoo residence. *See United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010).[1] The exact number of days between when Agent White received the tip and when the officers conducted the search is not entirely clear. But the district court found, and Rogers does not appear to dispute, that Agent White received the tip "several days" before the August 9 search. **[R. 130, PageID 688; D. 56 at 19-20].** Regardless, Rogers's voluntary admission prior to the search that he was doing the "same thing as last time," that is, growing marijuana, corroborated and refreshed the tip, rendering it

---

[1] Because Rogers did not raise his staleness argument below, we review his staleness challenge for plain error. *United States v. Doxey*, 833 F.3d 692, 702 (6th Cir. 2016). Therefore, Rogers will only prevail if the error "is obvious, affects substantial rights, and seriously affects the fairness or integrity of judicial proceedings." *United States v. Lopez-Medina*, 461 F.3d 724, 739 (6th Cir. 2006).

support for reasonable suspicion. *See United States v. Spikes*, 158 F.3d 913, 924 (6th Cir. 1998).

Thus, Rogers's staleness argument is unavailing.

The search of the Nankipoo residence was supported with reasonable suspicion and the warrantless-search provision in the probation order. Thus, the district court did not err in denying Rogers's motion to suppress.[2]

**B.       Sentencing.**

Rogers argues that the district court erred in finding he had a base offense level of 24 based on having two prior felony convictions for controlled substance offenses or crimes of violence. *See* U.S.S.G. § 2K2.1(a)(2). Specifically, Rogers contends that his 2011 conviction for manufacturing marijuana in violation of Tenn. Code Ann. § 39-17-417 is no longer a controlled substance offense because the Tennessee General Assembly and Congress have narrowed their respective definitions of marijuana to exclude hemp. *See* 21 U.S.C. § 802(16); Tenn. Code Ann. §§ 39-17-402(16)(C), 43-27-101(3). Rogers claims that because his prior conviction for manufacturing marijuana may have been for manufacturing hemp (we presume the conviction was for the least criminalized act), and because manufacturing hemp is no longer a controlled substance offense, the district court erred in counting the manufacturing marijuana conviction as a prior controlled substance offense. *See United States v. Burris*, 912 F.3d 386, 406 (6th Cir. 2019) (en banc).

Unfortunately for Rogers, the day after he filed his opening appellate brief, we decided *United States v. Clark*, 46 F.4th 404 (6th Cir. 2022). In *Clark*, we held that the sentencing court should look to the drug schedules in place at the time of the prior convictions at issue to determine

---

[2] On appeal, Rogers does not challenge the district court's finding that his statements to officers at the Nankipoo residence and later at the Lauderdale County Justice Center were admissible. Thus, we do not review that issue.

if a defendant was convicted of a "controlled substance offense" for purposes of the Guidelines. *Id.* at 406. *Clark* involved a similar question of whether a prior Tennessee marijuana conviction was a "controlled substance offense" under the Guidelines after the subsequent change of state and federal law excluded hemp from the definitions of marijuana. *Id.* at 406–08. We ultimately found that "courts must define the term 'controlled substance offense' in the Guidelines with reference to the law in place at the time of the prior conviction at issue." *Id.* at 415. Rogers's manufacturing marijuana conviction was a controlled substance offense in 2011; therefore, it was still a controlled substance offense when he was sentenced in this case.

III.

For the reasons stated above, we affirm.